## SHAUGHNESSY v. D'ANTONI.*
### No. 8803.
Circuit Court of Appeals, Fifth Circuit.
Dec. 16, 1938.

*Rehearing denied Jan. 16, 1939.

Joseph W. Carroll, Henry G. McCall, and Azzo J. Plough, all of New Orleans, La., for appellant.

John D. Miller and Max M. Schaumburger, both of New Orleans, La., for appellee.

Before FOSTER, SIBLEY, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

This appeal is from a judgment dismissing for want of a cause of action the suit of Clark D. Shaughnessy against Blaise D'Antoni to recover a balance due for services rendered and damages for breach of a contract whereby the former was to serve the latter for a period of ten scholastic years beginning Sept. 1st, 1927, and ending June 30, 1937. The petition exhibited a written contract, the presently material parts of which are:

"Blaise S. D'Antoni agrees to employ the services of Clark D. Shaughnessy for the purposes hereinafter enumerated and the said Clark D. Shaughnessy agrees to engage his services to the said Blaise S. D'Antoni for the said purposes hereinafter enumerated. The said Clark D. Shaughnessy shall engage his services to such university or college in the City of New Orleans which the said Blaise S. D'Antoni may designate and with which institution his services may be required in the capacity of Professor of Physical Education and Athletics, and/or Director of the Department of Physical Education, and in such capacities the said Clark D. Shaughnessy shall use his best efforts in the upbuilding thereof and of athletics in general, and shall act as head coach of football . . . And in the event of nonemployment by the said Shaughnessy in any university or college in the City of New Orleans then the said Shaughnessy shall advise the said D'Antoni in any athletic matters or things in which he, the said D'Antoni, may be personally concerned or with which he may have a sympathetic interest. The term of this contract shall be for a period of ten years beginning from Sept. 1st, 1927, and ending June 30, 1937. Blaise S. D'Antoni agrees to pay Clark D. Shaughnessy a salary for said services as follows: The sum of $15,000 per year from Sept. 1st, 1927, to June 30, 1932, payable at the rate of $1,500 per month at the end of each month during this period; the sum of $20,000 per year from Sept. 1st, 1932, to June 30, 1937, payable at the rate of $2,000 per month at the end of each month during this period . . . Clark D. Shaughnessy shall have the option to cancel this contract after the expiration of three years' service; Provided, however, that notice in writing of such cancellation must be given to Blaise S. D'Antoni on or before the thirtieth day of June, 1930, otherwise said contract is to remain in full force and effect."

The contract is dated Aug. 6, 1928. The petition alleges that it was signed on that date, in substitution of an earlier and more or less similar contract covering the period from Sept. 1st, 1927, to Sept. 1st, 1937, under which the first year of ten months had already been fulfilled; that at or before the beginning of the contract

D'Antoni desired Shaughnessy to employ his services with Loyola University in the City of New Orleans, and Shaughnessy did begin rendition of the services there and continued to perform them until April 1st, 1933; at that time his pay was in arrears and his situation at Loyola had become uncertain and unbearable so that he, having received an offer from the University of Chicago, asked D'Antoni what. he intended to do about carrying out his obligations under the contract and D'Antoni refused to say anything whatever; so Shaughnessy accepted the offer at Chicago University and went thither. The petition alleges further that Shaughnessy properly fulfilled his contract and was ready and willing to do whatever D'Antoni might lawfully direct him to do thereunder, but D'Antoni failed and refused to · fulfil the contract, to Shaughnessy's damage both in the arrears of pay prior to April 1st, 1933, and as to the remainder of the term in the difference between the sums promised and those received at Chicago University. It was also alleged that Shaughnessy never made any contract with Loyola University, and looked only to D'Antoni for his salary, and that what was paid by officials at Loyola was paid for and on account of D'Antoni, who himself paid large sums in addition.

■ It is argued orally that D'Antoni in making the contract was only an agent acting for a disclosed principal, Loyola University, and is not personally bound for its performance. On the face of the contract we think otherwise. It is signed by D'Antoni, and the promise is that he will pay. The services are not necessarily to be rendered at Loyola University, but may be at any other college in New Orleans; and in default of employment at any such, services are to be rendered to D'Antoni himself. It does not appear what, if any, connection D'Antoni had with Loyola University. It certainly does not appear that he had authority to make this contract for and to bind the University, and that Shaughnessy so understood. It appears rather to have been made by D'Antoni, the credit being given to him. The references in the contract to Loyola University and to an additional salary (not sued for) "equal to" a stated percentage of the net profits of football games there, are explainable by the fact that it was intended that he work at Loyola and he was in fact working there when this contract was made. · Nothing in the contract purports to bind the University to do or to pay anything.

■ In the brief it is argued that D'Antoni's obligation was met by securing the employment of Shaughnessy by ‵Loyola University, and that it and not he thereafter must pay. We do not so read the contract. The petition states that at no time did Shaughnessy enter into any contract with Loyola University, but that all the while he was serving · D'Antoni under this contract through arrangements D'Antoni had made with Loyola University.

■ The main contention, and that which the District Judge seems to have sustained, is that the contract being for a service of more than .five years was prohibited by the law of Louisiana. and was ab initio and in toto illegal and void, so that no action can be founded on it. The Civil Code of Louisiana declares: Art. 12: "Whatever· is done in contravention of a prohibitory law is void, although the nullity be not formally directed"; and Art. 1893: "An obligation without a cause, or with a false or unlawful cause, can. have no effect." These are principles of general jurisprudence. If one contracts to do a thing prohibited by law he cannot be compelled to do it, nor can he collect the promised cause or consideration for having done it. The contract is void, wholly void. Neither party can found any right on it.

■ The asserted prohibition of law here relied on is Art. 167: "Persons who have attained the age of majority can not bind themselves for a longer term than five years." Art. 168 continues: "Engagements of service contracted in a foreign country for a longer term shall be reduced to five years, to count from the day of the arrival of the person bound in this State." These Articles are not derived from the Code Napoleon, but were incorporated by the Louisiana Legislature in the Civil Code of 1825. In Pitcher v. United Oil & Gas Syndicate, 174 La. 66, 139 So. 760, the Supreme Court said that public policy prevents those who seek employment from being constrained to such a term as might seriously affect or restrict their ability to better their condition by a change of employment or employer. These Articles are for the benefit of the employe and they limit his ability to fetter his own freedom. In several cases contracts to serve more than five years have been re-

fused enforcement after five years have expired. See Page v. New Orleans Public Service, Inc., 184 La. 617, 167 So. 99; Hill v. Missouri Pac. Ry. Co., D.C., 8 F. Supp. 80. No case has decided whether such a contract is void ab initio, or whether it is good for five years but is not binding thereafter.

■■■ We think the latter is the correct view. Art. 167 does not in terms forbid or prohibit or punish anything. It says merely that an adult cannot bind himself longer than five years. If he attempts to bind himself for six, he has done nothing illegal, but has not bound himself for the sixth year because he cannot. He can perform for the sixth year if he is then willing to, but it is wholly optional. He transgresses no law in continuing freely to serve under the contract. The employer also, since the employe is not bound to serve the sixth year, is not bound to employ him. The contract binds neither party longer than five years. But if by mutual consent,· tacit or expressed, service is rendered for the sixth year, it must be paid for under the contract just as performance, though unenforceable, under any other unilateral contract must be. The law does not prohibit the making of a contract to serve for more than five years, nor prohibit its performance. It merely says the servant does not thereby bind himself for more than five years. After that he may, if he can better himself, freely decline to serve and go elsewhere. That freedom attains the full object and policy of the law. This construction is supported by Art. 168, which deals with a contract for more than five years made outside the State. It does not declare that such a contract is in itself contrary to the policy of the State and void, but that it shall be recognized and enforced for a period of five years within the State. An excessive contract made within the State may well be treated in the same way.

It is argued that there may be difficulties in some cases in adjusting the pay which was fixed in view of a longer service than five years. Such a difficulty created by the parties in their agreement cannot control the proper application of the statute. It can no doubt be equitably solved, should it arise. There is none here. The consideration to be paid is apportioned month by month for the service rendered. The contract fits any period that may be served.

There is a question as to the proper beginning of the period of five years for which the law sustains this contract. It may be Sept. 1st, 1927, the date mentioned for the beginning of the term and which was in fact the beginning of service under the former contract which this contract substitutes. No service was rendered under the present contract for the year preceding its making, but the two contracts may be so related, the surrender of one being the consideration for the other, as to make it proper to begin the period then. An argument can also be made that since the contract contains an option on Shaughnessy's part to terminate it June 30, 1930, he was not at first bound for a longer time than three years, and became bound for a period of more than five years only after that date passed without an exercise of the option. We need not decide the question, for we think, as already stated, that if Shaughnessy continued to render service after the expiration of the time for which he was bound and the services were accepted by D'Antoni, D'Antoni should pay for them according to the contract. In any view there was a cause of action for the balance due for services up to April 1st, 1933.

■■■ No cause of action is shown for breach of contract after that time, whether the five years had then expired or not. Shaughnessy did not render any services after that date, but made it impossible to render any by accepting employment in Chicago. Unless D'Antoni had already discharged him or had otherwise repudiated the contract for the future, the contract stands as abandoned by Shaughnessy. True it is that D'Antoni had not paid as he agreed, and Shaughnessy for that reason was not bound to continue to serve him and had a right to abandon the contract; but that would not make D'Antoni liable for future damages. To claim the full salary Shaughnessy must have stood by the contract, offering from month to month to serve and keeping in position to do so. And damages for breach of the contract for the future could only be based on a refusal by D'Antoni to proceed with it. The petition goes no farther than to say D'Antoni would say nothing. He had not contracted to say anything, but to pay for services. If Shaughnessy had offered to serve and D'Antoni had refused to let him, or had otherwise expressed a repudiation of his obligation, there would have been an anticipatory breach of the obliga-

tion, but such a breach is not shown by silence. Supposing that in some proper view the five years of binding obligation had not run out by April 1st, 1933, no cause of action for breach of the contract thereafter by D'Antoni is alleged.

Since a cause of action for a balance of salary earned is stated, the judgment is reversed and the cause remanded for further proceedings.