[Civ. No. 14643. Second Dist., Div. Three. Dec. 8, 1944.]

OLIVIA DE HAVILAND, Respondent, v. WARNER BROS. PICTURES, INC. (a Corporation), Appellant.

` Freston & Files, Ralph E. Lewis and Charles A. Loring for Appellant.

Gang, Kopp & Tyre for Respondent.

SHINN, J. — Defendant has appealed from a judgment declaring at an end its contract for the services of plaintiff as a motion picture actress. The ground of the decision was that the contract had run for seven years, the maximum life allowed such contracts by former Civil Code, section 1980, now section 2855 of the Labor Code. It was executed April 14, 1936, for a term of fifty-two weeks and gave the employer the right to extend the term for any or all of six successive periods of fifty-two weeks each. These options were exercised from time to time by the employer so as to cover the entire contract period. The services commenced May 5, 1936, and, except as interrupted by certain periods of suspension, were continued to August 13, 1943. The present action was commenced August 23, 1943. The contract gave the producer, defendant, the right to suspend plaintiff for any period or periods when she should fail, refuse or neglect to perform her services to the full limit of her ability and as instructed by the producer and for any additional period or periods required to complete the portrayal of a role refused by plaintiff and assigned to another artist. Plaintiff was to receive no compensation while so suspended or thereafter until she offered to resume her work. It was provided that the producer had the right to extend the term of the contract at its option, for a time equal to the periods of suspension. There were several such suspensions after December 9, 1939, and one suspension of thirty days which plaintiff agreed to and which was occasioned by her illness. In each instance defendant exercised its right to extend the term of the agreement. The several periods of suspension totaled some twenty-five

weeks. The facts as to the suspensions are not in dispute; defendant's right to impose them is not questioned. Plaintiff's reason for refusing the several roles was that they were unsuited to her matured ability and that she could not faithfully and conscientiously portray them. Her good faith and motives are not in issue, but according to the contract the producer was the sole judge in such matters and she had to do as she was told. The sole question is whether the provisions for suspension, and for extension of the term of the agreement, were lawful and effective insofar as they purported to bind plaintiff beyond seven years from the date her services were commenced. If they were lawful, plaintiff still owes twenty-five weeks of service; otherwise the contract came to an end May 5, 1943.

As enacted in 1872, section 1980 of the Civil Code read as follows: "A contract to render personal service, other than a contract of apprenticeship, as provided in the chapter on master and servant, cannot be enforced against the employee beyond the term of two years from the commencement of service under it; but if the employee voluntarily continues his service under it beyond that time, the contract may be referred to as affording a presumptive measure of the compensation."

In 1931, section 1980 was amended to read as follows:

"A contract to render personal service, other than a contract of apprenticeship, as provided in the chapter on master and servant, and other than a contract entered into pursuant to the proviso hereinafter in this section contained cannot be enforced against the employee beyond the term of seven years from the commencement of service under it;

"*Exceptional services*. Provided, however, that any contract, otherwise valid, to perform or render service of a special, unique, unusual, extraordinary or intellectual character, which gives it peculiar value, the loss of which cannot be reasonably or adequately compensated in damages in an action at law, may nevertheless be enforced against the person contracting to render such service, for a term not beyond a period of seven years from the commencement of service under it.

"*Presumptive measure of compensation*. Notwithstanding the provisions hereinabove in this section contained, if the employee voluntarily continues his service under it beyond that time, the contract may be referred to as affording a presumptive measure of the compensation."

In 1937, the section was repealed and section 2855 of the

Labor Code was enacted, as follows: ''A contract to render personal service, other than a contract of apprenticeship as provided in Chapter 4 of this division, may not be enforced against the employee beyond seven years from the commencement of service under it. Any contract, otherwise valid, to perform or render service of a special, unique, unusual, extraordinary, or intellectual character, which gives it peculiar value and the loss of which cannot be reasonably or adequately compensated in damages in an action at law, may nevertheless be enforced against the person contracting to render such service, for a term not to exceed seven years from the commencement of service under it. If the employee voluntarily continues his service under it beyond that time, the contract may be referred to as affording a presumptive measure of the compensation.''

Section 2 of the Labor Code provides: ''The provisions of this code in so far as they are substantially the same as existing provisions relating to the same subject matter shall be construed as restatements and continuations thereof and not as new enactments.''

▮ It is clear that section 2855 of the Labor Code is a restatement and continuation of former Civil Code, section 1980, and not a new enactment.

▮ It is the contention of defendant that under section 1980, as amended in 1931, a contract for ''exceptional services'' could be enforced against an employee for seven years of *actual* service, even though the employee would thereby be required to render services over a period of more than seven calendar years. Defendant's argument, in substance, is as follows: if it had not been the intention to take contracts for exceptional services out of the seven years' limitation, there would have been no occasion for the 1931 amendment, since employers holding contracts for the exclusive services of artists (a term we use to denote all of those who contract to render ''exceptional services'') could enjoin the rendering of the services of their employees to others during the term of the contract (*Lumley* v. *Gye*, 2 El.&Bl. 216, 118 Eng.Rep. 749; Civ. Code, § 3423); section 1980 of the Civil Code had always made an exception of contracts of apprenticeship; the 1931 amendment, in addition to changing the term of seven years, created another exception expressed in the first paragraph by the words ''other than a contract entered into pursuant to the proviso hereinafter in this section contained.''

The effect of this language, it is claimed, was to take contracts for "exceptional services" out of the general limitation of seven years and to state a special rule for them as found in the proviso. Our attention is then directed to the wording of the proviso that contracts for exceptional services "may nevertheless be enforced against the person contracting to render such service *for a term not beyond a period of seven years* from the commencement of service under it." It is argued that the phrase "for a term not beyond a. period of seven years" in the proviso, instead of the phrase "beyond the term of seven years" which was retained in the paragraph relating to contracts for services of a general nature, had a peculiar significance. The rule is cited that "when different language is used in the same connection in different parts of a statute it is presumed the legislature intended a different meaning and effect" (*McCarthy* v. *Board of Fire Commrs.* (1918), 37 Cal.App. 495 [174 P. 402]), and it is said in defendant's brief: "Under the rule above stated, such a distinctive choice of different words in two parts of the same statute must have indicated a different meaning and a different intent, and among other things, it indicates that 'term' was not used in the sense of mere lapse of time, since 'period' was also used, but referred to a 'term' established by the contract."

If we are to accept defendant's construction of the section as amended, we must add words to the phrase used in the proviso so that it would read "for a term not beyond a period of seven years *of actual service* from the commencement of service under it." In fact, the words "of actual service" could have been used appropriately after the word "term" and also after the words "seven years" if it had been the intention to do away with the limitation of seven calendar years from the commencement of service. It is true that the exception in the first clause of contracts for exceptional services, to which the proviso relates, suggests a possible intention to take such contracts out of the general rule, but the proviso itself is the enacting clause and the controlling one. It is the clause which determines whether the general limitation was intended to be removed as to contracts for exceptional services. Defendant's contention is that there could have been only one purpose in amending the section, namely, to allow the enforcement against employees of contracts for personal services to the extent of seven years of actual ser-

vice, regardless of the time over which such services might extend. With this we cannot agree. The difficulty with the argument, and which we think is insurmountable, is that the Legislature has not used the words "of service," and the failure to use those or equivalent words is far more significant as indicating the purpose of the enactment than the entire amendment as written. We cannot believe that the phrase "for a term not beyond a period of seven years" carries a hidden meaning. It cannot be questioned that the limitation of time to which section 1980 related from 1872 to 1931 was one to be measured in calendar years. It is conceded that contracts for general services are limited to seven calendar years. The substitution of years of service for calendar years would work a drastic change of state policy with relation to contracts for personal services. One would expect that such a revolutionary change, even as applied to a particular class of contracts, would be given expression in clear and unmistakable terms. It is difficult—in fact, too difficult—to believe that a purpose which could have been expressed so simply and clearly was intentionally buried under the camouflage of uncertainty and ambiguity. That the 1931 amendment of section 1980 was ineptly phrased may not be doubted. Confirmation of this fact is to be found in the changes of phraseology that were made when the section was carried into the Labor Code. The obvious redundancy in the phrase "for a term not beyond a period of seven years" was corrected and the innocuous phrase "other than a contract entered into pursuant to the proviso hereinafter in this section contained" was eliminated. ▇ The words "cannot be enforced" in the first clause were changed to "may not be enforced." This latter change, we might say, was obviously in the interest of grammatical purity and was not intended to confer any discretionary power upon the courts in the matter of enforcing personal service contracts. The words "may not" as used are mandatory.

▇ Although as a rule legislative enactments are drawn under expert guidance and with much care, it is inevitable that ambiguity will be encountered occasionally. But the ambiguities found in the 1931 amendment amounted to no more than imperfections of phraseology and fell far short of working any change in the substantive law. The language of section 1980, Civil Code, was carefully revised in the drafting of the Labor Code section. The ambiguous language which

was suggestive of a possible meaning that contracts of artists might be enforced for seven years of actual service was eliminated. The result, we think, was to state in the Labor Code section the true meaning of amended section 1980 and to state it in more carefully chosen terms. Again the phraseology which was used clearly indicated that the limitation applied to calendar years; otherwise the phrase "term of service" or "years of service" would have been used. The later enactment, we think, may be regarded as an interpretation by the Legislature of the meaning of section 1980, that is to say, that the phrases which were eliminated from that section were merely redundant and had added nothing to its meaning.

What we have said does not fully answer the question why section 1980 was amended, if it was not to make a special rule for the enforcement of contracts of artists. Defendant's argument is that if it did not serve that purpose it served no purpose at all. The amendment would seem to have been unnecessary, for it worked no change in the substantive or procedural rights of either the employer or the employee. It is not questioned by either party that before the amendment was adopted, employers who had contracted for the exclusive services of artists could enforce their contracts for the term limited by section 1980 by means of injunction restraining the rendering of services of their employees to others. Both plaintiff and defendant cite *Lumley* v. *Gye, supra,* in support of this proposition. Prior to 1919, section 3423 of the Civil Code provided that an injunction may not be granted to prevent the breach of a contract which would not be subject to specific performance. In 1919 the section was amended so as to except contracts for exceptional services such as the one in issue, which provide a rate of compensation of not less than $6,000 per annum. But even though the amendment of section 1980 did not enlarge the rights of employers to enforce such contracts other than to extend the term to seven years, the amendment was nevertheless desirable because it constituted a statement of a well established rule of equity and there is a good purpose served by the codification of established rules of law or equity. Even after the 1919 amendment of section 3423, there was in the codes no specific, affirmative statement of the right of an employer to enforce any kind of contract for personal services, by injunction or

otherwise. The amendment of section 3423 inferentially gave the employer the right to an injunction in certain cases. The amendment of 1980 stated the right in affirmative terms. It had the effect at least of corelating the two sections and removing any doubt as to what was intended by the amendment of section 3423, which, by inference only, extended the right of injunction in certain cases to the contract rights of the employers of artists. It was undoubtedly to the advantage of all those who might be affected, to have the law put in statutory form. These were sufficient reasons, and we believe the real reasons, for the amendment of section 1980.

We have not overlooked the earnest arguments of counsel as to whether a producer of motion pictures should or should not have the right to the exclusive services of an artist for a period of seven years of service. It is to be presumed that the Legislature considered such matters in legislating upon the subject, but the arguments do not aid us in determining what the code sections mean. ■ While the purpose sought to be accomplished in the enactment of a statute may be considered as an aid to interpretation, the question whether the Legislature has acted at all in a given particular must find answer in the statute itself. ■ We think the expressions of the various enactments cannot be bent to a shape that will fit defendant's argument, and that the several extensions of plaintiff's contract due to her suspensions were ineffective to bind her beyond May 5, 1943, seven years after her services commenced.

■ A second contention is that if defendant had not the right under the code to demand seven years of service, plaintiff has waived the right to question the validity of the extensions, which carried beyond the seven-year period. By her breaches of the contract, it is claimed, she brought into operation the provisions for extension and is now estopped to avoid them. Defendant relies upon section 3513 of the Civil Code, reading as follows: ''Anyone may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement.'' Defendant insists that the limitations of said sections 1980 and 2855 were enacted solely for the benefit of employees and not for a public reason, and may be waived. Reliance is placed upon *Stone* v. *Bancroft* (1903), 139 Cal. 78 [70 P. 1017, 72 P. 717], as a supporting authority. But the case went no further than to hold that the statute, section 1980, as it

then read, was not available to the employer as a defense to an action for salary earned after the (then) two years statutory period, for the reason that the limitation applied to actions by the employer but not to those brought against him by the employee. It was in that connection that the court held the limitation to be for the benefit of the employee only. No question of waiver or of public policy was involved or mentioned.

The fact that a law may be enacted in order to confer benefits upon an employee group, far from shutting out the public interest, may be strong evidence of it. It is safe to say that the great majority of men and women who work are engaged in rendering personal services under employment contracts. Without their labors the activities of the entire country would stagnate. Their welfare is the direct concern of every community. Seven years of time is fixed as the maximum time for which they may contract for their services without the right to change employers or occupations. Thereafter they may make a change if they deem it necessary or advisable. There are innumerable reasons why a change of employment may be to their advantage. Considerations relating to age or health, to the rearing and schooling of children, new economic conditions and social surroundings may call for a change. As one grows more experienced and skillful there should be a reasonable opportunity to move upward and to employ his abilities to the best advantage and for the highest obtainable compensation. Legislation which is enacted with the object of promoting the welfare of large classes of workers whose personal services constitute their means of livelihood and which is calculated to confer direct or indirect benefits upon the people as a whole must be presumed to have been enacted for a public reason and as an expression of public policy in the field to which the legislation relates. It was said in *In re Miller* (1912), 162 Cal. 687, 695 [124 P. 427]: "The courts must always assume that the legislature, in enacting laws, intended to act within its lawful powers and not to violate the restrictions placed upon it by the constitution." The validity of legislation infringing upon the right of contract is to be judged from its tendency to promote the welfare of the general public rather than that of a small percentage of citizens. (*In re Kazas* (1937), 22 Cal.App.2d 161 [70 P.2d 962].)

The power to restrict the right of private contract is one which does not exist independently of the power to legislate for the purpose of preserving the public comfort, health, safety, morals and welfare. The power to provide for the comfort, health, safety and general welfare of any or all employees is granted to the Legislature by article XX, section 17½ of the state Constitution. Enactments exercising the power have been upheld in many instances. (*In re Twing* (1922), 188 Cal. 261 [204 P. 1082]; *In re Ballestra* (1916), 173 Cal. 657 [161 P. 120]; *Sears* v. *Superior Court* (1933), 133 Cal.App. 704 [24 P.2d 842]; *In re Samaha* (1933), 130 Cal.App. 116 [19 P.2d 839]; *People* v. *McEntyre* (1938), 32 Cal.App.2d Supp. 752 [84 P.2d 560].) In *In re Oswald* (1926), 76 Cal.App. 347 [244 P. 940], the court said of an act making it a misdemeanor to refuse in certain circumstances to pay wages when due (p. 351): "We are persuaded that the public has an interest in the prevention of wrongs of this character, just as much as it is interested in the prevention of some other of those wrongs against property or wrongs against persons which are commonly regarded as being properly within the scope of operation of criminal law."

Penal statutes, within constitutional limitations, are conclusive evidence that the prohibited acts would be against the public interest. The several statutes which were involved in the cases last cited were enacted for the benefit of employees and also to regulate the employer-employee relationship in the interest of the public at large. The code sections we are considering are no less closely identified with public interest. Under the same principles, a law of Louisiana limiting the term of personal service contracts was upheld as a proper exercise of the police power and an expression of state policy in *Shaughnessy* v. *d'Antoni* (1938), 100 F.2d 422 (C.C.A. 5th). See, also, *Hill* v. *Missouri-Pac. Ry. Co.* (1933), 8 F.Supp. 80; *Page* v. *New Orleans Public Service, Inc.* (1936), 184 La. 617 [167 So. 99]; *Caldwell* v. *Turner* (1911), 129 La. 19 [55 So. 695]. The rights of employees as now declared by section 2855 of the Labor Code fall squarely within the prohibition of section 3513 of the Civil Code, that rights created in the public interest may not be contravened by private agreement.

Finally, it may be pointed out that the construction of the code sections contended for by defendant would render the law unworkable and would lead to an absurd result. If an employee may waive the statutory right in question by his

conduct, he may waive it by agreement, but if the power to waive it exists at all, the statute accomplishes nothing. An agreement to work for more than seven years would be an effective waiver of the right to quit at the end of seven. The right given by the statute can run in favor of those only who have contracted to work for more than seven years and as these would have waived the right by contracting it away, the statute could not operate at all. It could scarcely have been the intention of the Legislature to protect employees from the consequences of their improvident contracts and still leave them free to throw away the benefits conferred upon them. The limitation of the life of personal service contracts and the employee's rights thereunder could not be waived.

One of the conclusions of law was the following: "Defendant may not enforce the Contract against plaintiff and defendant should be enjoined and restrained from enforcing the Contract or attempting to enforce the Contract against plaintiff or interfering with the rendition by plaintiff of services for persons, firms or corporations other than defendant." The judgment contained an injunctive provision in the same language. Defendant challenges this provision as unsupported by the pleadings, the proof or the findings. The objection is well founded. Both plaintiff and defendant sought a declaration of their respective rights under the contract. The proof was not addressed to any other issue. Plaintiff was the only witness and her testimony and the documentary evidence that was received related only to the services she had performed and to those she had declined to perform and which led to the suspensions. The facts were not in dispute. Plaintiff offered to prove, in claiming a right to an injunction, that defendant had sent out many letters to other producers stating its position with reference to the contract and its claim that plaintiff was still in its employ. The offer was rejected and the court in so ruling stated, "I think the objection should be sustained. You see it is not an action in which Miss De Havilland is seeking relief from any threatened boycott or threatened action on the part of Warner Brothers. That is not in this case." The findings covered the essential facts as to the making of the contract, the dispute as to its meaning, and found that plaintiff did not violate the contract or default thereunder after May 5, 1943. There was no finding of facts which would justify an injunction.

The last finding was: "All of the allegations of the answer of defendant inconsistent with the foregoing findings

of fact are untrue." This was no finding at all upon the facts as to the several breaches of the contract and the extensions which were alleged in the answer. ▮ No point is made by defendant of the failure to find specifically upon the issues raised by the answer and no harm could have resulted from such failure in view of the stipulation made which covered all of the material facts upon which defendant relies.

There is nothing in the record that would justify a belief or even a suspicion that defendant will not respect and abide by the final declaration of the court as to the rights of the parties in the premises. ▮ An injunction is not proper to restrain the commission of acts in the future unless there is good reason to believe they will be committed if there is no restraint. Where no similar acts have been committed in the past and none are threatened to be committed in the future, and where it appears reasonable to believe they will not be committed, there is no occasion for an injunction and no right to one. ▮ The fact that defendant has openly insisted that plaintiff is still bound to it by contract does not justify the belief that it will do so contrary to a final decree that the contract has ended. (See *Sunset Scavenger Corp.* v. *Oddou* (1936), 11 Cal.App.2d 92 [53 P.2d 188].)

The judgment is modified by striking out all of paragraph 5 after the words, "Defendant may not enforce the contract against plaintiff," and as modified is affirmed, respondent to recover costs.

Desmond, P. J., and Wood (Parker), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 1, 1945.