[No. S094675. Mar. 28, 2002.]

THE COUNTY OF RIVERSIDE, Petitioner, v.
THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent;
XAVIER MARTIN MADRIGAL, Real Party in Interest.

## COUNSEL

Lewis, D'Amato, Brisbois & Bisgaard, Christopher D. Lockwood and Jordan N. Gray for Petitioner.

Jones & Mayer, Martin J. Mayer and Krista MacNevin Jee for California State Sheriffs' Association, California Police Chiefs Association and California Peace Officers' Association as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Michael P. Stone Lawyers, Michael P. Stone, Lan Wang, Muna Busailah, B. Eric Nelson and Catherine M. Kelly for Real Party in Interest.

Green & Shinee and Helen L. Schwab for Association for Los Angeles Deputy Sheriffs as Amicus Curiae on behalf of Real Party in Interest.

Rains, Lucia & Wilkinson and Alison Berry Wilkinson for Peace Officers Research Association of California's Legal Defense Fund as Amicus Curiae on behalf of Real Party in Interest.

Diane Marchant for Los Angeles Police Protective League as Amicus Curiae on behalf of Real Party in Interest.

## OPINION

**BROWN, J.**—In this case, we consider whether and under what circumstances a law enforcement agency must disclose to a probationary employee who is a peace officer confidential documents obtained or prepared in the course of a routine background investigation of that officer, conducted pursuant to Government Code section 1031, subdivision (d).[1] In addition to weighing the effect of various statutory provisions and common law principles, we must determine the relevance of the officer's express waiver of any right to view the documents in question. We conclude the law gives the officer in this case the right to view the documents, but his waiver of that right is enforceable. Accordingly, we reverse the judgment of the Court of Appeal with instructions to that court to issue a writ of mandate in accordance with our opinion.

### FACTUAL AND PROCEDURAL BACKGROUND

The City of Perris (the City) employed Xavier Martin Madrigal as a police officer until April 1996. During this time, the City received a citizen complaint to the effect that Madrigal had engaged in significant illegal conduct while on duty. Under the Court of Appeal holding in *Aguilar v. Johnson* (1988) 202 Cal.App.3d 241 [247 Cal.Rptr. 909] (*Aguilar*), this

---

[1]All further statutory references are to the Government Code unless otherwise indicated.

complaint qualified as an adverse comment possibly affecting Madrigal's employment status, and therefore the City had an obligation to allow Madrigal to view and respond to the complaint. (§§ 3305, 3306.) Madrigal alleges the City never informed him of the complaint. In the course of this litigation, Madrigal eventually obtained copies of the City's documentation pertaining to this complaint, but these documents are not included in the record before us, and therefore the record does not establish the precise allegations against Madrigal, when they arose, or how the City responded.

The City may have prematurely terminated its processing of this matter, because, effective April 11, 1996, it disbanded its police department, discharged all its officers (including Madrigal), and contracted instead with Riverside County (the County) for law enforcement services. At the same time, the County Sheriff's Department took over responsibility for law enforcement within the City's boundaries by establishing a unit dedicated to that end. The County also became the custodian of the City's employment records, including the citizen complaint against Madrigal. In order to staff its new unit, the County hired, on a probationary basis, all or most of the former officers of the City's police department as deputy sheriffs. The record makes clear, however, that these officers were discharged from the City without any promises or assurances of permanent employment with the County, and they were subject to the usual background investigation applicable to other new applicants for the position of deputy sheriff, including, at the discretion of the County, a polygraph examination.

In connection with this change in employment, Madrigal signed a number of documents. On March 20, 1996, he received a document entitled "Advisement to Peace Officers Seeking Lateral Placement." It stated: "You will undergo a rigorous, in-depth background investigation as a result of your application for this position." Madrigal signed a certification at the bottom of this document, stating, "I have read this advisement, understand its implications, and have received a copy of it." A second document, also signed by Madrigal, stated: "I understand that this background investigation . . . is to assess qualifications for this specific employment . . . . [¶] I understand that I will be given No FEEDBACK or results other than being notified of 'Passing' or 'Not Passing.' " A third document entitled "RELEASE AND WAIVER" generally authorized representatives of the County Sheriff's Department to obtain confidential information about Madrigal, including employment, financial, educational, and medical records. The release expired after one year. In signing this document, Madrigal affirmed: *"I further understand that I waive any right or opportunity to read or review any background investigation report prepared by the Riverside County Sheriff's Department."* (Italics added.)

On March 27, 1996, the County extended to Madrigal "a conditional offer of employment." The letter stated: "You should understand that our conditional offer of employment is made based upon your successful completion of the following requirements: 1. Background Investigation. [¶] . . . [¶] 4. Polygraph examination." The document made expressly clear what the County meant by "Background Investigation," including the fact that an investigator would check "employment history, financial responsibilities, driving record, possible criminal activity, and other pertinent information." The document then stated, "<u>You should also understand that no right to public employment is expressed in this offer</u>. . . . Your name will remain on the <u>expiratory</u> eligibility list as positions become available, from which permanent appointments will be made."

On April 10, 1996, Madrigal signed an additional document entitled "WAIVER OF BACKGROUND INVESTIGATION PRIOR TO HIRE." In it, he declared: "I understand that my employment with the Riverside County Sheriff's Department is contingent upon satisfactory completion of the background investigation which I have authorized and which has not yet been completed. [¶] I further understand that if information received from this confidential investigation indicates that my continued employment would not be consistent with the best interest of the Riverside County Sheriff's Department, I will be released without recourse."

On or about May 7, 1996, shortly after hiring Madrigal, the County asked him to submit to a polygraph examination regarding his alleged misconduct during his tenure as an officer for the City. Madrigal claims this was his first knowledge of the allegations against him. On May 9, 1996, he signed a document entitled "Polygraph Examination Consent Form," in which he voluntarily submitted to the polygraph examination, expressly affirming he was aware of his right to refuse. Madrigal learned from the officers who asked him to take the polygraph examination (and from the questions asked during the examination) that the allegations against him concerned sexual relations with a prostitute, extortion of a pornographic videotape, and the use of illegal drugs.

The County dismissed Madrigal on or about November 8, 1996, while he was still on probation. Consistent with his probationary status, the County did not give Madrigal any reason for the dismissal. Madrigal proceeded to seek employment with several other law enforcement agencies, without success. Madrigal suspected that these agencies obtained unfavorable information about him from the County, so he brought the underlying action against the County, seeking, among other things, disclosure of the County's background investigation file. Madrigal alleges violations of the Public

Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq.) and title 42 United States Code section 1983, and he states causes of action for both injunctive relief and damages, including expungement of adverse comments about him in the County's files and reinstatement with backpay.

Shortly after filing his complaint, Madrigal subpoenaed, among other things, copies of the documents in the County's background investigation file, including the polygraph examination report. The County provided some records, but objected to the portion of the subpoena that sought the County's and the City's background investigation files. Madrigal moved to enforce the subpoena, and the trial court ordered the County to produce the disputed records for a confidential in camera inspection. After several hearings, the court ordered the County to provide Madrigal with redacted copies of two documents: (1) the report, dated May 10, 1996, of the expert who conducted and evaluated the polygraph examination of Madrigal; and (2) the memorandum, dated November 25, 1996, of the investigator who conducted the County's background investigation of Madrigal, summarizing the investigator's findings.

The County petitioned the Court of Appeal for a writ of mandate challenging the superior court's decision. The Court of Appeal denied the writ petition summarily, and the County petitioned for review. We granted review and transferred the matter back to the Court of Appeal with directions to issue an order to show cause to the superior court. The Court of Appeal issued the show cause order and, after a hearing, again upheld the trial court, declining to issue a writ of mandate. The County petitioned for review a second time, and we again granted review.

## DISCUSSION

The dispute in this case turns largely on somewhat unusual facts: the closing of a city's police department and the transfer to the county of law enforcement responsibility within the geographic boundaries of the city. More generally, however, this case pits two statutory schemes—reflecting two somewhat divergent public policy considerations—against one another.

Section 1031, subdivision (d) provides that "peace officers" shall "[b]e of good moral character, as determined by a thorough background investigation." This statute reflects the public's interest in high quality law enforcement personnel. The law contemplates that new applicants be subject to the background investigation before they are hired, and to encourage candor from informants, employers (including the County) routinely ask applicants to waive any right they might have to review background investigation

materials. Prospective employers may also make express assurances of confidentiality to informants, and the County did so in this case. If the background investigation uncovers information that reflects negatively on an applicant's suitability for law enforcement work, the prospective employer can, of course, reject the applicant on that basis.

To facilitate this background investigation, section 1031.1 requires an applicant's employers and former employers to disclose "employment information" to a requesting law enforcement agency. (§ 1031.1, subd. (a).) Section 1031.1 addresses itself to "applicants not currently employed as a peace officer," but the parties agree that similar background investigations are routinely done for existing peace officers who are seeking transfer from one law enforcement agency to another or to a new position within the same agency.

Sections 1031 and 1031.1 are in tension with the Public Safety Officers Procedural Bill of Rights Act (hereafter the Bill of Rights Act or the Act). The Bill of Rights Act declares "that effective law enforcement depends upon the maintenance of stable employer-employee relations, between public safety employees and their employers." (§ 3301.) Among other things, the Act guarantees public safety officers the right to view any adverse comment placed in their personnel files (§ 3305) and to file, within 30 days, a written response, which will be attached to the adverse comment. (§ 3306.) These provisions reflect the public's interest in good relations between peace officers and their employers, including protecting peace officers from unfair attacks on their character. Peace officers, in particular, must confront the public in a way that may lead to unfair or wholly fabricated allegations of misconduct from disgruntled citizens. Law enforcement agencies must take these citizen complaints seriously but at the same time ensure fairness to their peace officer employees. The Bill of Rights Act therefore gives officers a chance to respond to allegations of wrongdoing.

The parties agree that, if the County had completed its background investigation *before* hiring Madrigal, and if that background investigation had caused the County not to hire Madrigal, Madrigal would now have no right to view documents in the investigation file. In that case, there is no employment relationship, no personnel file, and hence no question of the investigation file being subject to disclosure under the Bill of Rights Act. In this respect, Madrigal asserts—though the record is silent on the point—that the usual method when one law enforcement department merges into another is for the new employer to finish all its background investigations *before* the merger takes place. The new employer then extends offers of employment only to those officers from the former employer who meet its standards.

The County did not proceed in that fashion here. Rather than requiring Madrigal to remain unemployed while it completed its preemployment background investigation, it permitted Madrigal to begin work with the County provisionally—and to obtain the benefits of employment including full pay—while the background investigation was ongoing. It did so, however, on the express understanding that Madrigal's employment was probationary (that is, subject to the results of the background investigation) and that the results of the background investigation were confidential, just as they would be if the County had conducted the investigation prior to hiring Madrigal. Nevertheless, because the County hired Madrigal, the question now arises whether its background investigation file constitutes a "personnel file" for purposes of the Bill of Rights Act, thereby giving Madrigal the right to view and respond to adverse comments in that file. (§§ 3305, 3306.)

The County urges that disclosure of its confidential background investigation file in this case will make it impossible, in the future, for law enforcement agencies to conduct adequate background investigations, because they will not be able to promise confidentiality to their informants. The County's concern is overstated in light of the unusual factual circumstances of this case, including the County's decision to hire Madrigal prior to completion of its background investigation. On the other hand, Madrigal argues that nondisclosure will threaten the stability of employer-employee relations in law enforcement agencies by, among other things, undermining the rights of peace officers to defend themselves against unfounded accusations. Madrigal's concerns are equally overstated, again in light of the facts of this case, including Madrigal's express waiver of the rights he now seeks to enforce. Madrigal asks us to find the waiver unenforceable, but it was this same waiver that enabled him to enjoy the benefits of temporary employment with the County. Having benefited from his agreement with the County, Madrigal arguably should not be able to avoid the clear conditions placed on that agreement.

Thus, the essence of the dispute comes down to: (1) whether the Bill of Rights Act applies to the County's background investigation file, including whether it takes precedence over statutory and common law privileges that might otherwise preclude disclosure; and (2) whether Madrigal's waiver of any right to see the background investigation file is enforceable.

I. *Scope of Bill of Rights Act*

The County attempts to draw a distinction for purposes of the Bill of Rights Act between matters originating in conduct *prior to* the commencement of employment and matters originating in conduct *during* employment.

In other words, the County would limit the scope of the Bill of Rights Act to personnel matters that arise in the course of an officer's employment in a particular position and affect that position. In this regard, the County relies in part on *Brutsch v. City of Los Angeles* (1992) 3 Cal.App.4th 354 [4 Cal.Rptr.2d 456] (*Brutsch*). There, the Court of Appeal found the Bill of Rights Act inapplicable to an " ' "interviewer's worksheet," ' " which was a document prepared in connection with the employee's application for a promotion. (*Brutsch*, at p. 356.) The Court of Appeal in *Brutsch* said: "Clearly the [right to view adverse comments placed in a personnel file] relates to information which might affect the status of an officer's employment, e.g., charges of police brutality [citation], and not to unfavorable comments made in connection with a promotional examination." (*Id.* at p. 360.) The County reasons that Madrigal's application for a peace officer position with the County is analogous to the application for a promotion that was at issue in *Brutsch*, and documents related to processing Madrigal's application are, therefore, not part of Madrigal's "personnel file" as that term is used in the Bill of Rights Act, even though the documents were compiled after he commenced employment with the County. (See also *Burden v. Snowden* (1992) 2 Cal.4th 556, 561-562, 565 [7 Cal.Rptr.2d 531, 828 P.2d 672] (*Burden*) [Bill of Rights Act does not apply to a recruit who is not authorized to exercise peace officer powers]; *Los Angeles Police Protective League v. City of Los Angeles* (1995) 35 Cal.App.4th 1535, 1541-1542 [42 Cal.Rptr.2d 23] (*Los Angeles Police Protective League*) [Bill of Rights Act provision guaranteeing the right of officers to refuse polygraph examinations does not apply to an officer voluntarily seeking transfer to a sensitive assignment within the department].)

Under the County's reasoning, the Bill of Rights Act regulated the way in which *the City* handled the complaints against Madrigal, and Madrigal had (and perhaps still has) a right under that Act to view and respond to those complaints, as well as any other adverse comments entered into his City personnel file. But when Madrigal was discharged from the City (albeit for reasons unrelated to the complaints) and began employment with the County, the City records became, in the County's view, not personnel files but background investigation material, at least for purposes of Madrigal's employment with the County. On that basis, the County argues Madrigal has no right under the Bill of Rights Act to review documents the County prepared in investigating these matters. At the same time, the County readily acknowledges its obligation to handle personnel matters relating to Madrigal's conduct *while employed by the County* in accordance with the Bill of Rights Act.

The plain language of the Bill of Rights Act is inconsistent with the County's effort to distinguish its background investigation file in this way.

The Act applies to any adverse comment "entered in [an officer's] personnel file, *or any other file used for any personnel purposes*." (§ 3305, italics added.) In *Aguilar, supra*, 202 Cal.App.3d 241, the Court of Appeal construed this language broadly to include any document that " 'may serve as a basis for affecting the status of the employee's employment,' " including citizen complaints the law enforcement employer kept in a file separate from the officer's personnel file. (*Id.* at p. 251, quoting *Miller v. Chico Unified School Dist.* (1979) 24 Cal.3d 703 [157 Cal.Rptr. 72, 597 P.2d 475].) Consistent with the holding in *Aguilar*, we reject the assertion that a law enforcement agency's background investigation of a peace officer during probationary employment is somehow not a personnel matter subject to the Bill of Rights Act. The label placed on the investigation file is irrelevant. The materials in the file unquestionably " 'may serve as a basis for affecting the status of the employee's employment' " (*Aguilar*, at p. 251); indeed, that is the very purpose of the background investigation. In this regard, *Brutsch, supra*, 3 Cal.App.4th 354, and *Los Angeles Police Protective League, supra*, 35 Cal.App.4th 1535, are readily distinguishable because those cases did not involve an investigation affecting an officer's *existing employment status* but rather the officer's application for a promotion or a transfer to a special sensitive assignment. Because *Brutsch* and *Los Angeles Police Protective League* are distinguishable, we express no opinion as to whether these cases correctly found the Bill of Rights Act inapplicable. We also express no opinion as to whether a background investigation file compiled *prior to* an offer of employment becomes a "file used for any personnel purposes" (§ 3305), and thus subject to the Bill of Rights Act, once the applicant is hired, and whether in that context a limited waiver of the Bill of Rights Act would be enforceable.

Furthermore, our conclusion with respect to the applicability of the Bill of Rights Act remains valid even where the background investigation concerns a matter that occurred prior to the commencement of employment. The County's argument in this regard is premised on the fiction that it acts as Madrigal's *prospective* employer when investigating matters that arose prior to his employment with the County but his *actual* employer when investigating matters that arose during County employment. The problem with this argument is that the County cannot continue to distinguish these two roles when it comes to applying section 1031.1. Whether it viewed itself as a *prospective* employer or an *actual* employer when it compiled its background investigation file, now that the County has discharged Madrigal, it stands as a *former* employer obligated under section 1031.1 to provide "employment information" to other law enforcement agencies to which Madrigal might apply (§ 1031.1, subd. (a)), including "information in connection with job applications" such as the background investigation file. (§ 1031.1, subd. (c).)

Therefore, the County's background investigation file is—on account of the decision to hire Madrigal—available to every law enforcement agency to which Madrigal applies. For this reason, we think the distinction the County seeks to draw is illusory and conclude that the Bill of Rights Act applies whether the personnel matter at issue arises out of conduct prior to employment or during employment.

The County, however, argues that one of the two documents at issue here (the memorandum dated November 25, 1996, from the County's background investigator) was created after Madrigal was discharged from County employment, and therefore that document could not have been " 'a basis for affecting the status of [his] employment.' " (*Aguilar, supra,* 202 Cal.App.3d at p. 251.) On its face, however, this document summarizes the findings of a background investigation that was ongoing during Madrigal's employment with the County, and this background investigation unquestionably constituted a personnel matter. We think it would elevate form over substance and also permit an inappropriate end run around the Bill of Rights Act were we to hold that a law enforcement agency could avoid the Act simply by *first* terminating the employee and *then* placing its adverse comments in the employee's personnel file. Where, as here, the adverse comments arise out of an investigation, the very purpose of which was to assess the employee's qualifications for continued employment, we think the Bill of Rights Act applies, whether or not the comments are prepared and filed prior to termination.

The County also contends that various statutory and common law privileges apply to preclude disclosure of the background investigation file here. First, the County relies on section 1031.1, subdivision (e). As discussed, section 1031.1, subdivision (a) requires employers and former employers to cooperate with a background investigation of prospective peace officers by providing "employment information." Section 1031.1, subdivision (e) complements this requirement by providing, in relevant part: "Employment information disclosed by an employer to an initial requesting law enforcement agency shall be deemed confidential." The obvious import of this statute is to make clear that the receiving agency must treat the information with strict confidentiality. On the other hand, the employer that possesses the information must *disclose* it in accordance with its legal obligations, including the mandate of section 1031.1, subdivision (a), and also any obligation it might have under the Bill of Rights Act. Therefore, section 1031.1, subdivision (e) does not preclude disclosure here.

Finally, the County relies on three privileges: the deliberative process privilege (see, e.g., *Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d

1325, 1339-1346 [283 Cal.Rptr. 893, 813 P.2d 240] [Governor's calendar is protected from disclosure based on a weighing of the "public interest"]); the official information privilege (Evid. Code, § 1040, subds. (a), (b)(2) [official information "acquired in confidence" and "not open . . . to the public" is protected from disclosure if it is "against the public interest because [the] necessity [of] confidentiality . . . outweighs the necessity for disclosure in the interest of justice . . . ."]; *id.*, subd. (a)(2)); and the informant privilege (Evid. Code, § 1041 [same, but relating to the identity of criminal informants]). The County asserts that these privileges preclude disclosure.

Assuming these privileges otherwise apply, which is not at all clear, we think the specific provisions of the Bill of Rights Act, giving peace officers a right to view adverse comments in their personnel files, take precedence over the more general statutory and common law privileges on which the County relies. (Civ. Code, § 3534 ["Particular expressions qualify those which are general"].) All these privileges depend on an assessment of whether the public interest in nondisclosure outweighs the public interest in disclosure. In the case of the background investigation file at issue here, the Legislature has done this weighing of the public interest for us by guaranteeing peace officers the right, irrespective of the various privileges that might apply, to view adverse comments in their personnel records. We think this right is controlling, at least to the extent of *Madrigal's* right to see the documents in question. On the other hand, the privileges might well apply in a case where a newspaper or private investigator sought disclosure. We note, in this regard, the inconsistency in the County's argument that it cannot disclose the documents at issue here to Madrigal on account of the various privileges, when at the same time it concedes that it must disclose the same documents to every law enforcement agency to which Madrigal applies.

## II. *Waiver of the Bill of Rights Act*

Civil Code section 3513 provides: "Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." The Bill of Rights Act, which explicitly declares that its purpose is to promote "effective law enforcement" by maintaining "stable employer-employee relations" in law enforcement agencies (Gov. Code, § 3301), was clearly "established for a public reason." (Civ. Code, § 3513.) As we said in *Burden, supra*, 2 Cal.4th at page 567, "labor unrest and work stoppage among police officers pose an obvious threat to the health, safety and welfare of the citizenry . . . ." Therefore, we think the Bill of Rights Act is, like many other statutory schemes enacted for the protection of a class of employees, not subject to blanket waiver. (See, e.g., Lab. Code, §§ 206.5 [employee cannot waive

claim for wages due or to become due], 219 [employee cannot waive statutes regulating payment of wages], 356 [employee cannot waive statutory prohibition against employer taking employee's tips], 2804 [employee cannot waive protection of workers' compensation laws], 2855 [employee cannot waive seven-year limitation on duration of personal services contracts]; Unemp. Ins. Code, § 1342 [employee cannot waive benefits under Unemployment Insurance Act]; *Henry v. Amrol, Inc.* (1990) 222 Cal.App.3d Supp. 1, 6-7 [272 Cal.Rptr. 134] [employee cannot waive Labor Code right to be paid for unused vacation leave]; *Grier v. Alameda-Contra Costa Transit Dist.* (1976) 55 Cal.App.3d 325, 334-335 [127 Cal.Rptr. 525] [employee cannot waive protections of Labor Code regulating wage reductions for tardiness]; *Benane v. Internat. Harvester Co.* (1956) 142 Cal.App.2d Supp. 874, 878 [employee cannot waive Elections Code right to two hours' paid leave to accommodate voting].) Particularly at the application stage, a law enforcement agency often has greater bargaining power than an applicant, who may be unemployed or employed under less favorable circumstances than the agency is offering. If law enforcement agencies could routinely require applicants to waive their prospective rights under the Bill of Rights Act as a condition of employment, these employers could render the Bill of Rights Act nugatory vis-à-vis all new peace officers, essentially forcing these officers to opt out of the Act before they even begin work. That result would be inconsistent with Civil Code section 3513.

The question then arises whether a law enforcement employer can require an applicant to waive his or her rights under the Bill of Rights Act with respect to a background investigation, while otherwise retaining those rights. In other words, can a law enforcement agency collapse together its hiring process by conducting its background investigation *after* hiring the employee and then scrupulously segregating its background investigation files from other personnel files? Once again, the County essentially wants to wear two hats simultaneously; it wants to be the *prospective* employer vis-à-vis the background investigation, but the *actual* employer vis-à-vis all other personnel matters. We do not believe the law permits a law enforcement agency to proceed in this dual fashion. We think the risk is too great that the employer would somehow conflate its two roles, designating all personnel matters that arose in the early months of employment as part of its background investigation and then secreting those records from the employee despite the protections of the Bill of Rights Act. Newly appointed peace officers would then, as a practical matter, have no rights under the Bill of Rights Act during the standard probationary period that initiates their employment—that is, for as long as the background investigation continued. That circumstance would significantly undermine the Act's purpose of promoting stable employer-employee relations in law enforcement agencies.

The County, however, once again makes a distinction between investigation files relating to conduct *prior to* employment and files relating to conduct *during* employment. This distinction applies here, the County argues, to preserve Madrigal's rights under the Bill of Rights Act with respect to all matters *except those matters that arose prior to his employment with the County.* To that limited extent, we agree with the County that an employee may waive the protections of the Bill of Rights Act. Where the employee's waiver is limited to an investigation of matters that arose prior to employment, and where the waiver expires after one year, so the employee is not subject to continuing investigation long after being hired, enforcement of the waiver would not particularly undermine the public purpose of the Act. Rather, in such a case, enforcement of the waiver would serve that purpose by facilitating an earlier hiring date for new peace officers who are transferring from other agencies. In other words, a limited waiver of the type described would be consistent with stable employer-employee relations between peace officers and their employers. (Cf. *Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040 [68 Cal.Rptr.2d 758, 946 P.2d 427] [developers may waive the statutory time limitation during which a public entity must act on a request for a development permit]; *Cowan v. Superior Court* (1996) 14 Cal.4th 367 [58 Cal.Rptr.2d 458, 926 P.2d 438] [criminal defendants may waive a statute of limitations].)

But a waiver of this kind raises a different issue. Section 1031 requires peace officers to meet certain "minimum standards" including being "of good moral character, as determined by a thorough background investigation." (*Id.*, subd. (d).) If the minimum standards are to have any real meaning, a candidate has to meet the standards *prior to* becoming a peace officer. In other words, a law enforcement agency cannot *first* grant peace officer status to a civilian, including full peace officer powers, and *then* conduct its background investigation. Therefore, we think a waiver of this kind should only be sought in the case of an officer, like Madrigal, who is already a peace officer at the time of the waiver and is merely applying to transfer from one agency to another, or perhaps (though we do not decide the issue here) in the case of an officer who is applying for a different position within the same agency.

In sum, we conclude that a limited waiver of the Bill of Rights Act by an existing peace officer is enforceable. This conclusion does not, however, completely resolve the issue before us. ▉ "The waiver of an important right must be a voluntary and *knowing* act done with *sufficient awareness* of the relevant circumstances and *likely consequences.*" (*Roberts v. Superior Court* (1973) 9 Cal.3d 330, 343 [107 Cal.Rptr. 309, 508 P.2d 309], italics added.) ▉ As noted, section 1031.1 requires the County to share its

background investigation file with all law enforcement agencies to which Madrigal might apply, whereas enforcement of the waiver bars Madrigal from seeing that file himself. Under these circumstances, we believe it would be essentially unfair to enforce the waiver absent a showing by the County that the waiver was made with full awareness of this severe consequence. We conclude, however, that Madrigal knew or should have known of the consequences of his waiver. Madrigal was an existing peace officer who was in the process of applying for a new peace officer position. In the course of this process, he agreed to let the County obtain background investigations done of him by his former law enforcement employers. Under these circumstances, he had full knowledge that any background investigation the County performed would become available to future law enforcement employers to which he might apply. By waiving his right to view the County's background investigation file, he knew or should have known that he might find himself in his current situation. Accordingly, we conclude that the waiver is enforceable in this case.

## CONCLUSION

This case arises in the unusual factual context of a transition from city to county law enforcement in the City of Perris. Though the County may have proceeded in a good faith attempt to ease the impact on former City police officers by hiring those officers provisionally, it cannot, as a practical matter, maintain the fiction that it was merely like any other prospective employer with respect to its background investigation and therefore these files are not subject to the Bill of Rights Act. Accordingly, we conclude that, by proceeding as it did, the County subjected its background investigation of Madrigal to the disclosure requirements of the Bill of Rights Act. We further conclude, however, that Madrigal's express waiver of his right to view the background investigation file is enforceable because he knew or should have known the full consequences of that waiver. We express no opinion about Madrigal's entitlement to the other relief he seeks by way of his complaint in the underlying action.

We reverse the judgment of the Court of Appeal with instructions to issue the writ of mandate in accordance with our opinion.

George, C. J., Baxter, J., and Chin, J., concurred.

**WERDEGAR, J., Concurring and Dissenting.**—I concur in the majority's conclusion that, on the unusual facts of this case, real party in interest Xavier Martin Madrigal, though employed by petitioner County of Riverside (County) as only a probationary deputy sheriff, was nevertheless protected

by the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq. (the Act)) generally. More specifically, Madrigal was entitled to the protection of Government Code section 3305, which states in pertinent part that "[n]o public safety officer shall have any comment adverse to his interest entered in his personnel file, or any other file used for any personnel purposes by his employer, without the public safety officer having first read and signed the instrument containing the adverse comment indicating he is aware of such comment . . . ." Because the County used negative information to discharge Madrigal from his position without first allowing him to read the information, I agree the County violated Madrigal's rights under the Act. (Maj. opn., *ante*, at pp. 795, 803.)

I further agree with the majority's conclusion that the protections of the Act are not waivable generally because those protections were established for the protection of the public. (Maj. opn., *ante*, at pp. 804-805.) As the majority notes, Civil Code section 3513 provides: "Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." Thus, to cite but two examples, a temporary teacher may not waive his or her tenure rights because such rights are "elaborately regulated by the Education Code [and] reflect the public policy of the state" (*Covino v. Governing Board* (1977) 76 Cal.App.3d 314, 322 [142 Cal.Rptr. 812]), and a worker may not waive the seven-year limit on personal service contracts because that limit "is calculated to confer direct or indirect benefits upon the people as a whole [and] must be presumed to have been enacted for a public reason and as an expression of public policy in the field" (*De Haviland v. Warner Bros. Pictures* (1944) 67 Cal.App.2d 225, 235 [153 P.2d 983]).

The protections of the Act unquestionably are "established for a public reason" and thus by virtue of Civil Code section 3513 are unwaivable by private agreement. Government Code section 3301 expressly sets forth the Legislature's intent that the Act's protections are for a public, not private, benefit: "The Legislature hereby finds and declares that the rights and protections provided to peace officers under this chapter constitute a matter of statewide concern. The Legislature further finds and declares that effective law enforcement depends upon the maintenance of stable employer-employee relations, between public safety employees and their employers. In order to assure that stable relations are continued throughout the state and to further assure that effective services are provided to all people of the state, it is necessary that this chapter be applicable to all public safety officers, as defined in this section, wherever situated within the State of California."

We recognized the public benefit underlying the Act in *Burden v. Snowden* (1992) 2 Cal.4th 556 [7 Cal.Rptr.2d 531, 828 P.2d 672]: " '[I]t can hardly be

disputed that the maintenance of stable employment relations between police officers and their employers is a matter of statewide concern. The consequences of a breakdown in such relations are not confined to a city's borders. These employees provide an essential service. Its absence would create a clear and present threat not only to the health, safety and welfare of the citizens of the city, but also to the hundreds, if not thousands, of nonresidents who daily visit there. Its effect would also be felt by the many nonresident owners of property and businesses located within the city's borders. . . . The inevitable result is that labor unrest and strikes produce consequences which extend far beyond local boundaries.'" (*Id.* at p. 567, quoting *Baggett v. Gates* (1982) 32 Cal.3d 128, 139-140 [185 Cal.Rptr. 232, 649 P.2d 874].)

I thus find that Civil Code section 3513 compels the conclusion the procedural protections our Legislature has provided to public safety officers may not be waived. It is here I part company with the majority, which finds that, as to matters arising before his employment, Madrigal may be held to have waived his rights under the Act. (Maj. opn., *ante*, at p. 806.) The majority's attempt to carve out a narrow exception tailored to fit the facts of this case—a waiver by new peace officers *transferring from other agencies* as to matters that arose *prior* to their current employment—is supported by neither law nor logic. At the outset, the majority's reasoning finds a waiver is permissible here because allowing Madrigal to waive his rights under the Act "would not particularly undermine the public purpose of the Act." (Maj. opn., *ante*, at p. 806.) By so reasoning, the majority answers the wrong question. The question is not whether Madrigal's or any other particular waiver would undermine the Act's purpose; the question, rather, is whether the Act is supported by a public purpose. If so, Civil Code section 3513 instructs that waivers are prohibited. That on the particular facts of the case a waiver would or would not undermine the public purpose underlying the statutory scheme is irrelevant. We are not at liberty to second-guess the wisdom of the Legislature's blanket prohibition of waivers of rights granted for a public benefit and provide freewheeling, ad hoc judicial review of the overall fairness or effectiveness of the Act under the circumstances of a particular case.

That the majority sees fit to recognize a one-year limit to the exception it creates is an indication that it has surpassed the limits of judicial authority. No such limitation appears in the Act itself. Yet, the Legislature knows how both to include a one-year time limit for rights under the Act (see Gov. Code, § 3304, subd. (d) [investigations into misconduct limited to one year]) and to provide for waiver of those limits (*id.*, subd. (d)(2) [authorizing written waiver of the one-year time period]). Because the Act expressly

provides for specific time limits and waivers in other circumstances, we must assume the Legislature did not intend any additional, unstated time limits or waivers for which there is no express statutory authorization. (See, e.g., *Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 999 [73 Cal.Rptr.2d 682, 953 P.2d 858]; *In re Chantal S.* (1996) 13 Cal.4th 196, 206-207 [51 Cal.Rptr.2d 866, 913 P.2d 1075].)

Nor is the majority persuasive in reasoning that recognition of an officer's right to waive statutory protections under the Act would serve the Act's purpose of fostering stable employee-employer relations between peace officers and their employers by "facilitating an earlier hiring date for new peace officers who are transferring from other agencies." (Maj. opn., *ante*, at p. 806.) The determination of how best to serve the Act's purpose is for the *Legislature*, not this court. Moreover, if the County wished to achieve the benefit of an earlier hiring date while still maintaining the confidentiality of its sources, it was not without lawful means to do so: it could either have commenced its background investigations at an earlier date or postponed the merger to a later one, in either case concluding its investigations before extending offers of employment. As the Court of Appeal opined below: "Instead, probably to effect a seamless transfer of authority and uninter-rupted service, the County simply accepted the Perris officers as probation-ary, but fully active, law enforcement personnel. By doing so, the County avoided the necessity of recruiting and training new deputies and was able promptly to assume its contractual duties. Having chosen to proceed in this manner, the County must accept the burden with the benefit and recognize Madrigal's . . . rights [under the Act]." (Fn. omitted.)

Although I concur to the extent the majority finds Madrigal protected by the Act, I dissent from its further holding that Madrigal effectively waived his rights under the Act. Accordingly, I would affirm the judgment of the Court of Appeal.

Kennard, J., and Moreno, J., concurred.