[No. B206254. Second Dist., Div. Five. Apr. 8, 2009.]

WALTER McMAHON, Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

## Counsel

Stone Busailah, Michael P. Stone and Marc J. Berger for Plaintiff and Appellant.

Rockard J. Delgadillo, City Attorney, Claudia McGee Henry, Assistant City Attorney, and Gregory P. Orland, Deputy City Attorney, for Defendants and Respondents.

OPINION

**KRIEGLER, J.**—Government Code section 3306.5, part of the Public Safety
Officers Procedural Bill of Rights Act (POBRA), grants covered officers the
right "to inspect personnel files that are used or have been used to determine
that officer's qualifications for employment, promotion, additional compensa-
tion, or termination or other disciplinary action." (Gov. Code, § 3306.5,
subd. (a).) Appellant Walter McMahon, employed as an officer in the Los
Angeles Police Department (Department),[1] was the subject of approximately
20 citizen complaints. The Department's internal affairs investigation into
those complaints determined they were all meritless, having been filed in bad
faith by residents who were upset with the officer's successful antigang
efforts in and around the Imperial Courts housing project, where he regularly
patrolled. The Department resolved all the complaints in favor of Officer
McMahon, determining the officer was either exonerated or the allegations
were unfounded. Although the Department provided Officer McMahon with
the opportunity to review each of the complaints and various related docu-
ments and findings, the officer demanded to review additional materials from
the underlying investigations, such as interview tapes and transcripts pursuant
to Government Code section 3306.5.[2] When the Department refused, Officer
McMahon filed the underlying petition for writ of mandate under Code of
Civil Procedure section 1085 to compel disclosure.

In his timely appeal, Officer McMahon contends the trial court erred in
denying his writ of mandate. We affirm the trial court's finding that the
Department complied with its obligations under POBRA in withholding the
requested materials. As we explain, it appears that the Department disclosed
all adverse comments made against the officer and gave him the opportunity
to respond to them as mandated by POBRA. The mere speculation that
underlying investigative materials might contain additional adverse comments
does not support a disclosure obligation under POBRA, at least where, as
here, nothing in the record suggests the existence of such comments and the
undisclosed materials are maintained in such a way that the Department is not
authorized to use them in making personnel decisions.

## STATEMENT OF FACTS

We base our statement of facts mainly on the factual summary contained in
the superior court's statement of decision. Except as noted, the operative facts

---

[1] Respondents in this matter are the City of Los Angeles and William Bratton in his official
capacity as Chief of the Los Angeles Police Department. We shall refer to them collectively as
the Department.

[2] Officer McMahon also sought disclosure of two PowerPoint presentations and "phone
packages," which he claims contained information derived from the investigative materials.

are not in dispute. In 2004, Officer McMahon was assigned to the Los Angeles Police Department's Southeast Area Gang Impact Team, where he investigated illegal gang activity, primarily in and around the Imperial Courts housing project. At that time, his employment classification was Police Officer III. His antigang efforts in the spring and summer of 2004 led to numerous gang-related arrests, seizures of contraband, and evictions of housing project residents who had assisted in gang activities. In a concerted effort to discredit Officer McMahon and undermine his effectiveness, beginning in July and continuing for the next seven months, residents of the Southeast Area community filed formal personnel complaints against Officer McMahon, alleging criminal and administrative misconduct. Approximately 20 complaints were referred to the Department's internal affairs division for investigation and were consolidated into 16 separate complaints. Although Officer McMahon's supervisors knew the citizen complaints had been filed, he was permitted to remain in his assignment because it was suspected the complaints were unfounded.

One of the complainants was Ronald Antwine, a subject of the officer's gang investigations, whom Officer McMahon knew as a resident of the nearby Nickerson Gardens project. On September 16, 2004, while Officer McMahon was transporting a prisoner to the police station, the officer stopped to check the vehicle tags on Antwine's car. Finding them expired, he had the car impounded for the Vehicle Code violation. Two days later, Antwine initiated a complaint against Officer McMahon concerning that incident.

Officer McMahon's direct superiors were informed about the incident on the day it occurred. Captain Sergio Diaz, the commanding officer of Southeast Area at that time, was concerned Officer McMahon might have been motivated by retaliatory intent in choosing to impound Antwine's vehicle. Captain Diaz did not believe the officer committed misconduct, but felt he had exercised poor judgment and created at least the appearance of retaliatory intent. Captain Diaz "never contemplated an insubordination charge against Officer McMahon." However, given the volume and vehemence of the citizen complaints, the captain was also concerned about Officer McMahon's physical safety in his current assignment. Captain Diaz conferred with Deputy Chief Earl Paysinger, the commanding officer of operations for South Bureau, as to whether an assignment change would be in Officer McMahon's best interests. That same day, Harbor Area's commanding officer, Captain Patrick Gannon, approved of the transfer to Harbor Division on a "loan" basis, which was initiated immediately. Captain Diaz did not review Officer McMahon's personnel file or any of the complaints pending against him. The loan transfer, which was "not intended to be punitive in any way," later became a permanent transfer.

Captain Gannon, although informed of Captain Diaz's concerns, "had no problem accepting" Officer McMahon because he knew him to be a talented and hardworking investigator. There were no insubordination complaints against Officer McMahon during his tenure at Harbor Division. There were no restrictions placed on the officer, who retained his Police Officer III grade. Captain Gannon initially placed Officer McMahon on uniformed patrol to allow him to become oriented to the new location. Within seven months, Captain Gannon assigned Officer McMahon to Harbor Division's gang impact team as an investigator—the same assignment he had at Southeast. Captain Gannon was aware that Officer McMahon was dissatisfied with having been loaned to Harbor Division, but the captain reassured him that they were "happy to have him" there.[3]

All of the citizen complaints against Officer McMahon here at issue were determined to be "unfounded" or "exonerated," as those terms are defined by Penal Code section 832.5. When a complaint is unfounded, it "means that the investigation clearly established that the allegation is not true. [¶] . . . 'Exonerated' means that the investigation clearly established that the actions of the peace or custodial officer that formed the basis for the complaint are not violations of law or department policy." (Pen. Code, § 832.5, subd. (d)(2), (3).) Within a month of each adjudication, the Department served Officer McMahon with each complaint, along with various other documents mandated by the Department's internal regulations as set forth in the Los Angeles Police Department Manual—the complaint face sheet, complaint adjudication form, employee interview form, and the commanding officer's letter of transmittal. Although Officer McMahon was given the opportunity to respond and have his response lodged with each complaint, he did not avail himself of that opportunity with regard to any of the complaints.

In November 2004, Sergeant Tonya Dummar of the internal affairs division was assigned to make a comprehensive investigation into the complaints against Officer McMahon. She detailed her investigative efforts and findings in an eight-page, single-spaced document entitled "Fact Sheet," dated July 28, 2005, and served on Officer McMahon on approximately February 23, 2006, before the commencement of the underlying action.[4] Sergeant Dummar concluded the complaints were spurious, having been undertaken to drive Officer McMahon out of the assignment where he had been so effective.

---

[3] According to the Department's request for judicial notice, Officer McMahon was promoted to Detective I on February 19, 2008, two months after the lower court issued its statement of decision. As we explain *post*, because the fact of the promotion would not render Officer McMahon's claim moot, as the Department argues, there is no reason to reach the merits of that request.

[4] An unredacted version of the Fact Sheet was filed under seal and reviewed by the trial court, but has not been made part of the appellate record. A redacted version, which was filed below as part of the Department's exhibits is before this court. Review of the redacted version

Beginning in May 2006, Officer McMahon, through his counsel, sent demands to the Department requesting additional written and recorded materials generated by the internal affairs investigation into the 16 citizen complaints—specifically, the audiotapes and transcripts of witness interviews, surveillance notes, case notes, chronological files, summaries, and memoranda. On August 17, 2006, the Department wrote to Officer McMahon's counsel, explaining why it would not release any additional materials for review. Among other things, the Department stated that Officer McMahon had been provided with copies of all materials used by the commanding officers who adjudicated the complaints. Also, the Fact Sheet provided to Officer McMahon gave a comprehensive summary of the complaints, including the identities of the complainants. As the officer had been provided with detailed descriptions of the complainants' accusations, he had been given adequate opportunity to respond to the accusations consistent with POBRA. Moreover, as none of the complaints was sustained, there were no adverse comments placed in his personnel file requiring a responsive comment.

On November 20, 2006, Officer McMahon filed his verified petition for peremptory writ of mandate to compel the Department to make available for inspection all the undisclosed documents and materials compiled in the course of investigating the personnel complaints against him, such as transcripts of investigative interviews, surveillance notes, case notes, and chronological files. Officer McMahon also sought to inspect two PowerPoint presentations prepared by the Department, relating to the personnel complaints against him, which were used to brief high-level Department officials concerning gang enforcement activities. Without access to those materials, Officer McMahon alleged he was unable to ascertain whether his personnel records contained misconduct allegations or adverse comments that could potentially impair his career advancement or opportunity for future employment. His claim was grounded on Government Code section 3306.5, subdivision (a).

The trial court denied his petition, finding Officer McMahon had failed to present substantial evidence that the documents he sought to review had been used for POBRA's enumerated personnel purposes or were likely to be used for such purposes in the future. The court also found that Officer McMahon did not present substantial evidence to justify his assertion that the materials disclosed to him by the Department failed to give him an adequate basis for responding to the citizen complaints.

---

shows that it would have provided Officer McMahon with detailed descriptions of the allegations, apparently including the complainants' identities along with those of witnesses and their statements.

## DISCUSSION

■ "To obtain writ relief under Code of Civil Procedure section 1085, the petitioner must show there is no other plain, speedy, and adequate remedy; the respondent has a clear, present, and ministerial duty to act in a particular way; and the petitioner has a clear, present and beneficial right to performance of that duty. [Citation.] A ministerial duty is one that is required to be performed in a prescribed manner under the mandate of legal authority without the exercise of discretion or judgment." (*County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 593 [79 Cal.Rptr.3d 489].) Thus, the question presented is whether Government Code section 3306.5 required disclosure of the investigative and other materials withheld from Officer McMahon by the Department. That determination depends on whether those requested materials qualify as "personnel files that are used or have been used to determine that officer's qualifications for employment, promotion, additional compensation, or termination or other disciplinary action." (Gov. Code, § 3306.5, subd. (a).) In essence, Officer McMahon argues that the trial court's decision rested on a faulty, unduly restrictive interpretation of Government Code section 3306.5. Under his proffered reading, the statute's plain meaning entails a disclosure obligation so broad as to encompass any materials that might contain comments adverse to the officer, regardless of whether their use for enumerated personnel purposes is proscribed by statute or departmental regulation. We disagree.

The standard of review is well established. "On appeal following a trial court's decision on a petition for a writ of mandate, the reviewing court ' "need only review the record to determine whether the trial court's findings are supported by substantial evidence." ' (*Lake v. Reed* (1997) 16 Cal.4th 448, 457 [65 Cal.Rptr.2d 860, 940 P.2d 311], quoting *Bixby v. Pierno* (1971) 4 Cal.3d 130, 143, fn. 10 [93 Cal.Rptr. 234, 481 P.2d 242].) However, we review questions of law independently. [Citation.] Where, as here, the facts are undisputed and the issue involves statutory interpretation, we exercise our independent judgment and review the matter de novo. [Citation.]" (*Alliance for a Better Downtown Millbrae v. Wade* (2003) 108 Cal.App.4th 123, 129 [133 Cal.Rptr.2d 249].)

■ Our Supreme Court recently summarized the standards for statutory interpretation in a matter involving POBRA and related statutory provisions. " ' " 'It is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' " ' [Citations.] 'To the extent this examination of the statutory language leaves uncertainty, it is appropriate to consider "the consequences that will flow from a particular interpretation. [Citation.]" [Citation.] Where more than one statutory construction is arguably possible, our "policy has long been to favor the

construction that leads to the more reasonable result. [Citation.]" [Citation.] This policy derives largely from the presumption that the Legislature intends reasonable results consistent with its apparent purpose. [Citation.] Thus, our task is to select the construction that comports most closely with the Legislature's apparent intent, with a view to promoting rather than defeating the statutes' general purpose, and to avoid a construction that would lead to unreasonable, impractical, or arbitrary results. [Citations.]' " (*Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 290 [64 Cal.Rptr.3d 661, 165 P.3d 462], quoting *Copley Press, Inc. v. Superior Court* (2006) 39 Cal.4th 1272, 1291–1292 [48 Cal.Rptr.3d 183, 141 P.3d 288].)

■ In assessing the legislative purpose behind Government Code section 3306.5, we must read it in context, as part of a comprehensive legislative scheme encompassed in POBRA. From its placement within that scheme, it is obvious the Legislature added section 3306.5 to help effectuate the related concerns of the two preceding sections, Government Code sections 3305[5] and 3306,[6] which are to provide covered officers with "the right to review any adverse comment placed in their personnel files and to submit a written response." (*Commission on Peace Officer Standards & Training v. Superior Court, supra*, 42 Cal.4th at p. 292.) As such, the general purpose of all three provisions is to facilitate the officer's ability to respond to adverse comments potentially affecting the officer's employment status. (See *County of Riverside v. Superior Court* (2002) 27 Cal.4th 793, 799 [118 Cal.Rptr.2d 167, 42 P.3d 1034] (*Madrigal*).)

Also bearing on the statute's intended purpose is a closely related provision from the Penal Code, which instructs law enforcement departments and agencies on the manner in which records of citizens' personnel complaints are to be maintained. As pertinent here, Penal Code section 832.5, subdivision (c), provides that citizen complaints "that are determined by the peace or custodial officer's employing agency to be frivolous . . . or unfounded or exonerated, or any portion of a complaint that is determined to be frivolous, unfounded, or exonerated, shall not be maintained in that officer's general personnel file." Rather, they "shall be retained in other, separate files that shall be deemed personnel records" for purposes of two different statutory schemes, the California Public Records Act (Gov. Code, § 6250 et seq.) and section 1043 of the Evidence Code (motions brought pursuant to *Pitchess v.*

---

[5] "No public safety officer shall have any comment adverse to his interest entered in his personnel file, or any other file used for any personnel purposes by his employer, without the public safety officer having first read and signed the instrument containing the adverse comment indicating he is aware of such comment . . . ." (Gov. Code, § 3305.)

[6] "A public safety officer shall have 30 days within which to file a written response to any adverse comment entered in his personnel file. Such written response shall be attached to, and shall accompany, the adverse comment." (Gov. Code, § 3306.)

*Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305]). (Pen. Code, § 832.5, subd. (c).) By virtue of this provision, complaints found meritless are excised from the personnel file used by the officer's employer for making personnel decisions.

As the trial court found, it was undisputed that the citizen complaints at issue, as well as the underlying investigative materials sought by Officer McMahon, were not kept in the officer's official personnel files, but were maintained in the Department's internal affairs files. Further, pursuant to the Department's internal regulations, personnel decisions could be based only on materials in the officer's official personnel files, not those maintained by the internal affairs department.

The Department's obligation to disclose the underlying investigative materials turns on whether they qualify as "personnel files that *are used* or *have been used* to determine that officer's qualifications for employment, promotion, additional compensation, or termination or other disciplinary action" under Government Code section 3306.5, subdivision (a). (Italics added.) In its statement of decision, the trial court quite properly reasoned that it was not called upon to interpret the statute's ultimate scope in the abstract, but rather to determine whether Officer McMahon made a sufficient showing that the records he sought fell within section 3306.5. In this case, the "have been used" aspect of this statute presents no significant interpretive difficulty. We inquire whether Officer McMahon carried his burden of showing the Department used or relied on the undisclosed materials for any of the enumerated personnel purposes.

The only way Officer McMahon argues the materials identified by Officer McMahon were "used" for the enumerated purposes of the POBRA provision was for his loan and transfer to Harbor Division. However, it is undisputed that Officer McMahon retained the same rank and rate of pay when involuntarily transferred to Harbor Division. The officer presented no substantial evidence to dispute the Department's showing that its decision was motivated by legitimate administrative reasons. In any event, the officer's personnel files were not considered in the loan and transfer decisions. Despite the officer's contrary speculations, the record reveals the transfer was not imposed for a punitive purpose, but for legitimate concerns reasonably believed to be in the officer's and the Department's best interests. Accordingly, Officer McMahon failed to present substantial evidence that the Department's action was punitive or disciplinary for purposes of POBRA.[7] (*Benach v. County of Los*

---

[7] As stated *ante*, the Department subsequently promoted Officer McMahon to the Detective I classification, which tends to bolster the finding that his transfer was nonpunitive. The promotion does not render the officer's appeal moot because the gist of his claim is not that the nondisclosure had a specific adverse impact on his career, but that the undisclosed materials

*Angeles* (2007) 149 Cal.App.4th 836, 843 [57 Cal.Rptr.3d 363] [transfer at same rank and pay grade without a finding of wrongdoing by the officer is not a punitive action].)

The mere fact that the complaints were favorably adjudicated and Officer McMahon was not disciplined did not absolve the Department of its disclosure requirements under POBRA. (See, e.g., *Seligsohn v. Day* (2004) 121 Cal.App.4th 518, 525–531 [16 Cal.Rptr.3d 909] (*Seligsohn*) [police officers were entitled to a copy of the complaints filed against them, even though the investigation was closed without any action being taken against the officers and copies of the complaints were not placed in the officers' personnel files]; *Sacramento Police Officers Assn. v. Venegas* (2002) 101 Cal.App.4th 916, 925–926 [124 Cal.Rptr.2d 666] (*Venegas*) [agency required to disclose to officer information contained in its internal affairs files that did not result in disciplinary action against the officer].) However, this was not a case in which adverse personnel complaints were withheld from the officer. Unlike the situation in *Seligsohn* and *Venegas*, the Department disclosed all the complaints along with related documents that detailed the criticisms leveled at Officer McMahon.

As the trial court found, Officer McMahon could only speculate that the materials disclosed to him by the Department failed to give him an adequate basis for responding to the citizen complaints. For instance, Officer McMahon argues that absent access to the undisclosed investigative materials, he could not respond to "gratuitous accusations regarding" improper sexual conduct on the part of the citizen complainants. In fact, review of the redacted version of the Fact Sheet shows those accusations were recounted in detail, with Officer McMahon merely speculating as to the possibility that other adverse comments might be contained in the undisclosed materials. Nor does Officer McMahon attempt to explain why the complaints themselves, along with the related materials initially disclosed, were insufficient to permit an informed response. Instead, he merely speculates that the investigative materials might contain additional or different accusations of misconduct. In sum, by disclosing the citizen complaints and related documents along with the Fact Sheet, the Department not only complied with its internal regulations, but comported with POBRA's "legislative remedy . . . to ensure that an officer is made aware of adverse comments and is given an opportunity to file a written response, should he or she choose to do so." (*Venegas, supra*, 101 Cal.App.4th at p. 926.)

We turn to the question of whether the undisclosed documents are reasonably subject to the "are used" aspect of Government Code section 3306.5,

---

might deleteriously affect his career in the future. (See *Alliance for a Better Downtown Millbrae v. Wade, supra*, 108 Cal.App.4th at p. 128.)

subdivision (a). Applying our Supreme Court's guidelines, we read the provision so as to promote the statute's general purpose while avoiding unreasonable, impractical, or arbitrary results. (*Commission on Peace Officer Standards & Training v. Superior Court, supra*, 42 Cal.4th at p. 290.) The stated purpose of Government Code section 3306.5 is to permit review of the specified files in order to discover whether the officer believes any materials have been "mistakenly or unlawfully placed in the file"—with the remedy that the "the officer may request, in writing, that the mistaken or unlawful portion be corrected or deleted." (Gov. Code, § 3306.5, subd. (c); see *Commission on Peace Officer Standards & Training v. Superior Court, supra*, 42 Cal.4th at p. 292 [Gov. Code, §§ 3305 & 3306 were intended to provide officers with "the right to review any adverse comment placed in their personnel files and to submit a written response"].)

It was undisputed that the Department's internal regulations are designed to filter out all unsustained complaints from the officer's personnel files that are used to make the types of personnel decisions listed in Government Code section 3306.5. Moreover, Penal Code section 832.5, subdivision (c), mandates that frivolous, unfounded, or exonerated citizen complaints such as the ones here at issue "shall not be maintained in that officer's general personnel file," but must be separately maintained as personnel files for potential disclosure for quite different purposes—compliance with the California Public Records Act and disclosure mandated under *Pitchess v. Superior Court, supra*, 11 Cal.3d 531. Officer McMahon offered no evidence to dispute the Department's showing that the undisclosed materials were separately maintained by the internal affairs division and *not* kept in the personnel files that the Department was entitled to use for making the personnel decisions listed in Government Code section 3306.5.

Therefore, it would be unreasonable and contrary to legislative intent to read Government Code section 3306.5, subdivision (c), as requiring the Department to disclose internal investigative materials that the Department is not authorized to use in making the enumerated personnel determinations. This is especially so given that the only remedy available to the officer is to correct or delete materials that the Department's regulations had already eliminated from the kind of personnel determinations subject to POBRA. As the trial court cogently reasoned, Officer McMahon cannot bring himself within the "are used" aspect of Government Code section 3306.5, subdivision (c), unless he can make a sufficient showing that the records he seeks are officially authorized to be used for the statutory purposes. Again, Officer

McMahon merely speculates that the Department's safeguards against improper usage might prove inadequate sometime in the future.[8]

Nevertheless, relying on *Madrigal, supra*, 27 Cal.4th 793, Officer McMahon asserts that if he seeks employment with a different law enforcement office, the undisclosed materials may be subject to disclosure in future background investigations pursuant to the broad definition of "employment information" as used in Government Code section 1031.1, subdivision (c).[9] The decision in *Madrigal*, however, demonstrates why that concern does not mandate disclosure of additional materials in his case. In *Madrigal*, our Supreme Court confronted an "unusual factual situation" in which a peace officer was provisionally hired by Riverside County while it undertook a background investigation. That investigation uncovered a citizen complaint against the officer, made while he had been previously employed as an officer for the City of Perris—but which had never been disclosed to the officer. The county dismissed the officer and rebuffed his subsequent demands to inspect its investigation file. (27 Cal.4th at pp. 795–797.) The content of the file was not made part of the record on appeal.

■ The *Madrigal* court held that POBRA required disclosure of "adverse comments in [peace officers'] personnel files," which implicated the undisclosed citizen personnel complaint. (*Madrigal, supra*, 27 Cal.4th at p. 804.) However, the court did not discuss whether Government Code section 1031.1 extended to the kind of investigative materials here at issue, much less whether POBRA required the disclosure of such materials. (See 27 Cal.4th at p. 802.) Nor did *Madrigal's* rationale imply the existence of such a broadly framed obligation. To the contrary, POBRA was intended to give officers "a chance to respond to allegations of wrongdoing."[10] (27 Cal.4th at p. 799.) Thus in *Madrigal*, the officer could not respond because he was never advised of the complaint or the results of the investigation. Here, nothing in this record indicates Officer McMahon's opportunity to respond to the complaints was compromised in any significant degree, given that the Department disclosed to him all the citizen complaints along with other related materials including the Fact Sheet.

---

[8] We, of course, do not reach the question of whether such investigative materials would be subject to disclosure when there is reason to believe they were relied on in making adverse findings or contain adverse comments beyond those referenced in the materials disclosed to the officer.

[9] "For purposes of this section, 'employment information' includes written information in connection with job applications, performance evaluations, attendance records, disciplinary actions, eligibility for rehire, and other information relevant to peace officer performance, except information prohibited from disclosure by any other state or federal law or regulation." (Gov. Code, § 1031.1, subd. (c).)

[10] As the Department points outs, Officer McMahon's opening brief violated California Rules of Court, rule 8.1115(a) by citing the appellate court opinion in *Madrigal*, which was superseded after the Supreme Court granted review.

■ No more availing is Officer McMahon's reliance on the definition of "personnel records" under Penal Code section 832.8, subdivision (e), which refers to "[c]omplaints, or investigations of complaints, concerning an event or transaction in which he or she participated, or which he or she perceived, and pertaining to the manner in which he or she performed his or her duties." The definition in Penal Code section 832.8, subdivision (e), is qualified by Penal Code section 832.5. As we have already explained, the latter provision required that the complaints here at issue "shall not be maintained in that officer's general personnel file." Officer McMahon's argument is thus circular and fails to address the crucial impediment to his claim: The Department provided the officer with the complaints and related materials detailing all known adverse comments, while Penal Code section 832.5 and the Department's own regulations proscribe the Department from considering the undisclosed materials in making the personnel determinations covered by POBRA. Again, his unsupported assertion that there may be "secret, unanswered stigmatizing allegations" lurking in the internal affairs investigative files that may undermine his chances for future employment amounts to mere speculation.

Finally, we assess Officer McMahon's argument that POBRA mandated the disclosure of two sets of materials in addition to the underlying investigative materials—(1) the Department's two PowerPoint presentations used to brief high-level Department officials concerning gang enforcement activities, and (2) "phone packages," which Officer McMahon claims are unofficial telephone communications between Department supervisors concerning an officer's candidacy for promotion. It was not disputed that one of the PowerPoint presentations—the one related specifically to the personnel complaints against McMahon—has been misplaced or lost by the Department.[11] The trial court reviewed the other PowerPoint presentation in camera, as it had been lodged below under seal. The court concluded the presentation was made for the informational purpose of briefing Department officials on the status of gang enforcement activities and did not qualify as personnel files for purposes of Government Code section 3306.5, subdivision (a). As to the "phone packages," the court found Office McMahon's allegations to be entirely speculative.

Officer McMahon points to nothing in the appellate record to challenge those findings. Moreover, there is no evidentiary basis to believe these additional materials (to the extent they exist) contain any relevant information beyond that contained in the complaints themselves or the Fact Sheet.

---

[11] It was undisputed that this first presentation, which was used to "brief select command staff officers" concerning the complaints against Officer McMahon, "reflect[ed] the substantive contents of" the Fact Sheet prepared by Sergeant Dummar.

Accordingly, the officer failed to satisfy his burden of showing the Department had a ministerial duty to disclose those materials pursuant to POBRA.

## DISPOSITION

The judgment is affirmed. Respondents are to recover their costs on appeal.

Armstrong, Acting P. J., and Mosk, J., concurred.