[No. E052296. Fourth Dist., Div. Two. Feb. 15, 2012.]

PATRICK BARBER, Plaintiff and Appellant, v.
DEPARTMENT OF CORRECTIONS AND REHABILITATION, Defendant
and Respondent.

COUNSEL

Patrick Barber, in pro. per., for Plaintiff and Appellant.

Rose E. Mohan and Stephen A. Jennings for Defendant and Respondent.

OPINION

**CODRINGTON, J.—**

I

## INTRODUCTION

Petitioner and appellant Patrick Barber appeals from a trial court judgment denying his petition for writ of mandamus, seeking production of his

personnel and internal affairs files (records) from California's Department of Corrections and Rehabilitation (CDCR) under Government Code sections 3306.5 and 3309.5.[1] The trial court rejected Barber's records request on the ground he was not entitled to his records under the Public Safety Officers Procedural Bill of Rights Act (POBRA) (§ 3300 et seq.) after termination from his employment with CDCR.

Barber contends CDCR violated POBRA by not producing his records and requests this court to impose penalties against CDCR for the violation. Barber claims CDCR had a history of concealing and/or destroying his records. We conclude Barber did not have a right under section 3306.5 to review his records after he was no longer employed with CDCR. We deny imposition of penalties and affirm the judgment.

II

FACTUAL AND PROCEDURAL BACKGROUND

CDCR hired Barber in 1998. CDCR placed Barber on administrative time off with pay on January 11, 2008, until his termination on April 10, 2009. At the time of termination, Barber was employed as a parole agent I with CDCR's Division of Juvenile Justice (DJJ), located at the Heman G. Stark Youth Correctional Facility, in Chino. Barber filed an appeal of his April 2009 termination with the State Personnel Board (SPB).

Meanwhile, on June 4, 2009, the Office of the Attorney General filed a *Pitchess* motion[2] for production of Barber's personnel records in the case of *Ruelas v. Shelby* (Super. Ct. San Bernardino County, 2010, No. RCV-RS-083017). On June 21, 2009, Barber sent DJJ director, Sandra Youngen (Youngen), a letter informing her that he had discovered the *Pitchess* motion, and CDCR had violated Evidence Code section 1043 by failing to notify him of the motion. Barber requested independent counsel to represent him in the *Pitchess* motion matter. In response to Barber's letter, he was provided with representation. The trial court granted the *Pitchess* motion, resulting in CDCR producing Barber's records for 1999 through 2004.

---

[1] Unless otherwise noted, all statutory references are to the Government Code.

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305] (*Pitchess*) (right to discover complaints contained in an officer's personnel file).

On October 22, 2009, six months after Barber's termination, Barber sent Youngen a letter requesting copies of his CDCR records from 2005 through 2009. Barber stated that his records request included "records of internal affairs investigations, adverse actions, requests for adverse action, citizen complaints, records in the personnel departments at the Heman G. Stark Youth Correctional Facility and at Headquarters in Sacramento, and records containing psychological and/or other medical information concerning me." Barber specifically requested records from four office of internal affairs investigations between 2005 and 2009 (files Nos. S-HGS-021-05-A; S-HGS-716-07-C; S-HGS-716-07-A; and S-HGS-030-08-A).

About a week later, Barber sent CDCR Attorney Gregory Nicholas (Nicholas) a letter concerning Barber's conversation with Nicholas on October 28, 2009, regarding Barber's records request. During the conversation, Nicholas told Barber his records request was denied. Barber stated in his letter that he was entitled to the records because they were relevant to two actively litigated cases in the SPB (cases Nos. 08-4882 and 09-1199). Barber acknowledged that he had received his records for the period of 1999 through 2004 as a result of the *Pitchess* motion. Barber further stated that there was no legal justification for denying him review of his 2005 through 2009 records.

On November 5, 2009, Barber filed in the superior court a petition for writ of mandamus and complaint for declaratory and injunctive relief under POBRA, against CDCR, DJJ, and Youngen (writ petition). Barber requested copies of documents and records in his personnel files and internal affairs files, from 2005 to the date of the hearing on the writ petition. Barber alleged he was entitled to the requested records under section 3306.5 and paragraph 9.03 of the memorandum of understanding (MOU) between the State of California and the California Correctional Peace Officers Association. Barber prayed in his petition for a peremptory writ of mandamus directing CDCR to make the requested documents available to Barber and for a declaration that under section 3306.5, CDCR violated Barber's POBRA rights by refusing to produce the requested documents.

On January 8, 2010, the trial court held a hearing on Barber's writ petition and instructed CDCR to provide the court with the underlying administrative record. CDCR's attorney explained that Barber's writ petition did not emanate from a specific administrative proceeding. The court asked Barber if his termination prompted his writ petition for records. Barber said no and

explained there had been a *Pitchess* motion in which a number of documents were deliberately withheld. When he discovered that, he felt it necessary to bring the instant writ petition demanding complete compliance with the law. Barber believed CDCR was deliberately withholding additional documents and needed the requested records before the September SPB hearing on his termination. The court instructed CDCR to file a response to Barber's writ petition.

On February 18, 2010, CDCR filed an answer to Barber's writ petition. CDCR alleged as an affirmative defense that Barber was dismissed from employment with CDCR on April 10, 2009, and therefore had no rights to review his records under POBRA or under the MOU. In Barber's reply to CDCR's response, Barber argued that the fact that he had been terminated did not preclude him from reviewing his records under POBRA.

On February 19, 2010, the trial court held a predisposition hearing on Barber's writ petition and inquired as to why Barber had filed two actions. Barber explained that he had filed the instant writ petition to compel review of his records.[3] The other writ petition, brought under Code of Civil Procedure section 1094.5, was for *Skelly*[4] violations and was based on extrinsic fraud committed by CDCR. The SPB had told Barber in the other administrative proceeding that, in order to get his records, he had to get a court order for the records by filing the instant writ petition. Barber said that after the *Pitchess* motion in *Ruelas v. Shelby*, he discovered CDCR had committed extrinsic fraud by withholding documents from Barber. The documents should have been produced during his actions in 2004, challenging two terminations, in which he was ultimately reinstated in both instances. Barber acknowledged he had been terminated again in 2009, and was no longer employed at CDCR. He had not yet had a final hearing before the SPB on his termination.

Barber further explained that he brought the instant writ petition, not only to gather information in connection with his termination, but also to establish that CDCR committed fraud and a *Skelly* violation by withholding and destroying his records in 2004. CDCR's attorney acknowledged that Barber's 2009 termination case had not yet been heard by the SPB. The hearing was scheduled for September 29, 2010. The other case involved Barber's previous terminations in 2004 and the withholding of a document during the previous proceedings. The trial court ordered the hearing on the writ petition set on June 25, 2010. The hearing was later continued to July 30, 2010.

---

[3] The writ petition was brought under Code of Civil Procedure section 1085.

[4] *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774] (*Skelly*).

On March 23, 2010, Barber filed an opening brief for the hearing on his writ petition. Barber argued that CDCR provided him with two notices of adverse action, one in 2008 and one in 2009. The 2008 adverse action was overturned by the SPB based on a POBRA violation. The SPB revoked the notice of adverse action based on CDCR violating section 3304, subdivision (d).[5] The 2009 action concerned Barber's termination on April 10, 2009. Barber argued in his opening brief that he was entitled to all documents CDCR relied upon in issuing the notices of adverse action, in order to enable him to respond adequately to them. Barber claimed that CDCR had a history of concealing and destroying his records.

CDCR filed opposition to Barber's writ petition, asserting that three of the files Barber requested (S-HGS-716-07-C; S-HGS-716-07-A; and S-HGS-030-08-A) had already been provided to Barber in connection with his pending SPB misconduct adjudications. Files S-HGS-716-07-C and S-HGS-716-07-A related to the SPB hearing on Barber's April 2009 termination. CDCR attached as an exhibit the notice of adverse action, which included a list of all materials provided to Barber along with the notice of adverse action (23 documents, including the investigative report). With regard to file S-HGS-030-08-A, CDCR stated that the file pertained to another notice of adverse action concerning Barber's demotion on October 30, 2008. The matter had been through the SPB process and it was anticipated a writ of administrative mandate would be filed. CDCR attached as an exhibit the notice of adverse action, which included a list of all materials provided to Barber along with the notice of adverse action (16 documents, including the investigative report). As to the two other files Barber requested (S-HGS-021-05-A and IAU-05-021), CDCR stated that the files did not exist. As to Barber's request for CDCR to provide him with copies of documents, as opposed to making them available for his review, CDCR noted that under section 3306.5, CDCR was not required to provide Barber with copies.

On July 15, 2010, Barber filed a reply to CDCR's opposition to the writ petition. Barber asserted that he was requesting all of his records from 1999 through 2009. Barber claimed CDCR had not provided Barber with all of his records and CDCR had a history of concealing and/or destroying his records, as demonstrated in the *Pitchess* motion matter in *Ruelas v. Shelby*.

---

[5] Section 3304, subdivision (d)(1) provides: "(d)(1) Except as provided in this subdivision and subdivision (g), no punitive action, nor denial of promotion on grounds other than merit, shall be undertaken for any act, omission, or other allegation of misconduct if the investigation of the allegation is not completed within one year of the public agency's discovery by a person authorized to initiate an investigation of the allegation of an act, omission, or other misconduct."

On July 30, 2010, the trial court heard and denied Barber's writ petition. The court concluded Barber was not entitled to POBRA protection or rights after termination of his employment on April 10, 2010.

## III

## STANDARD OF REVIEW

In reviewing a trial court's decision on a petition for writ of mandate, we uphold the trial court's factual findings if supported by substantial evidence. (*Stryker v. Antelope Valley Community College Dist.* (2002) 100 Cal.App.4th 324, 329 [122 Cal.Rptr.2d 489].) We, however, independently review the court's decisions on questions of law, including the trial court's interpretation of statutory language, such as POBRA. (*Unnamed Physician v. Board of Trustees* (2001) 93 Cal.App.4th 607, 619 [113 Cal.Rptr.2d 309]; *Shafer v. Los Angeles County Sheriff's Dept.* (2003) 106 Cal.App.4th 1388, 1396 [131 Cal.Rptr.2d 670].) " 'Where, as here, the facts are undisputed and the issue involves statutory interpretation, we exercise our independent judgment and review the matter de novo. [Citation.]' [Citation.]" (*McMahon v. City of Los Angeles* (2009) 172 Cal.App.4th 1324, 1331 [92 Cal.Rptr.3d 68] (*McMahon*); see *Seligsohn v. Day* (2004) 121 Cal.App.4th 518, 522 [16 Cal.Rptr.3d 909] (*Seligsohn*).)

## IV

## OFFICER RIGHTS TO RECORDS UNDER POBRA

POBRA "lists basic rights and protections afforded all peace officers by the public entities that employ them. (§ 3300 et seq.)" (*Shafer v. Los Angeles County Sheriff's Dept., supra,* 106 Cal.App.4th at p. 1396.) Under POBRA, section 3309.5, subdivision (c), the superior court has initial jurisdiction over any proceeding brought by any public safety officer against any public safety department for alleged violations of POBRA. Exhaustion of administrative remedies is not required before seeking judicial relief from an alleged violation of POBRA. (*Aguilar v. Johnson* (1988) 202 Cal.App.3d 241, 251–252 [247 Cal.Rptr. 909] (*Aguilar*).) Here, after CDCR rejected Barber's records request, Barber filed in the trial court his writ petition under Code of Civil Procedure section 1085, alleging violation of his POBRA rights under Government Code section 3306.5.

Section 3306.5 states with regard to a public safety officer reviewing his or her own personnel records: "(a) Every employer shall, at reasonable times and at reasonable intervals, upon the request of a public safety officer, during

usual business hours, with no loss of compensation to the officer, permit that officer to inspect personnel files that are used or have been used to determine that officer's qualifications for employment, promotion, additional compensation, or termination or other disciplinary action. [¶] (b) Each employer shall keep each public safety officer's personnel file or a true and correct copy thereof, and shall make the file or copy thereof available within a reasonable period of time after a request therefor by the officer."

Barber argues that under section 3306.5 and paragraph 9.03 of CDCR's MOU, he had a right to review his records, even though, when he requested review of his records in October 2009, he was no longer employed with CDCR. CDCR terminated Barber in April 2009. But Barber clearly was not entitled to review his records under paragraph 9.03 of the MOU since it is limited to records requested by "employees."

Citing *Melkonians v. Los Angeles County Civil Service Com.* (2009) 174 Cal.App.4th 1159 [95 Cal.Rptr.3d 415], CDCR argues that Barber also was not entitled to review his records under section 3306.5 because he no longer was an officer when he requested the records. *Melkonians* is not on point. It concerns whether the one-year limitation period under POBRA for providing notice of termination after initiating investigation of misconduct was tolled. Melkonians appealed from an order denying his petition for writ of administrative mandamus. The court in *Melkonians* rejected Melkonians's POBRA challenge on the ground the one-year limitation period for notice of termination had not run because it did not include the 10-month period during which Melkonians was not employed as a public safety officer. "Thus, he was not entitled to the protection afforded by [POBRA] during that interval." (*Melkonians*, at p. 1174.) The *Melkonians* court noted that "the rights and protections of [POBRA] only apply to public safety officers. [Citations.]" (*Ibid.*; see *Bell v. Duffy* (1980) 111 Cal.App.3d 643, 648–649 [168 Cal.Rptr. 753].) *Melkonians* is not dispositive since it does not address the issue of whether an officer is entitled to review his or her records under section 3306.5 after termination.

Case law cited by Barber is also not dispositive. Barber relies on *Aguilar, supra,* 202 Cal.App.3d 241, *County of Riverside v. Superior Court* (2002) 27 Cal.4th 793, 803 [118 Cal.Rptr.2d 167, 42 P.3d 1034] (*Riverside*) (Fourth Dist., Div. Two), *Sacramento Police Officers Assn. v. Venegas* (2002) 101 Cal.App.4th 916 [124 Cal.Rptr.2d 666] (*Venegas*), and *Seligsohn, supra,* 121 Cal.App.4th 518, for the proposition that he was entitled to review his records under section 3306.5, even though his employment with CDCR had been terminated six months before he requested to review his records. Barber's reliance on these cases is misplaced since none of them concern or discuss a records request under section 3306.5. Section 3306.5 was enacted in 2000,

after the records requests in *Aguilar*, *Riverside*, *Venegas*, and *Seligsohn*. None of the cases cited by Barber address the issue raised in the instant case of whether under section 3306.5 Barber was entitled to review his personnel records after he was terminated.

The issue in *Aguilar, supra*, 202 Cal.App.3d 241, was whether the police department violated Officer Aguilar's POBRA rights under sections 3305 and 3306 by failing to notify him promptly of a citizen complaint and provide him with an opportunity to comment on the complaint. (*Aguilar*, at p. 249.) The citizen complaint was placed in a confidential investigation file separate from Aguilar's personnel file, and surfaced during a *Pitchess* motion. (*Aguilar*, at pp. 245–246.) The court in *Aguilar* rejected the police chief's arguments that the citizen complaint did not constitute an adverse comment under sections 3305 and 3306, and it did not have to be disclosed because it was not placed in Aguilar's personnel file (*Aguilar*, at pp. 250–251). The instant case does not concern an undisclosed citizen complaint, and there is no evidence of nondisclosure of adverse comments or of CDCR withholding documents containing adverse comments.

Barber argues that the California Supreme Court in *Riverside, supra*, 27 Cal.4th 793, rejected the proposition that, after termination from employment, an officer no longer has a right to review his or her records under POBRA. But the court in *Riverside* did not address the issue as to a records review request under section 3306.5 after termination. In *Riverside*, the City of Perris Police Department failed to inform Officer Madrigal of a citizen complaint against him. Around the time of the police department's investigation of the citizen complaint, the City of Perris disbanded its police department, discharged its officers, including Madrigal, and contracted with Riverside County for law enforcement services. (*Riverside*, at p. 796.) Riverside County hired Madrigal as a sheriff's deputy on a probationary basis, conditional upon favorable results of a background investigation. Madrigal signed a release and waiver, authorizing access to his confidential records and waiving the right to review any background investigation reports. (*Ibid.*)

During the county's background investigation of Madrigal, after Madrigal had begun employment with the county as a probationary employee, the county discovered the citizen complaint against Madrigal. (*Riverside, supra*, 27 Cal.4th at p. 797.) As a consequence, the county dismissed Madrigal. Madrigal suspected his dismissal was based on unfavorable information obtained during the background investigation. Madrigal filed an action seeking disclosure of the county's background investigation file under POBRA. (27 Cal.4th at p. 797.) Madrigal subpoenaed copies of documents in the county's background investigation file and moved to enforce the subpoena. The trial court ordered the county to provide Madrigal with copies of two

background investigation documents produced during an in camera inspection. One of the documents was a memorandum prepared a couple of weeks after Madrigal's termination, summarizing the county investigator's background investigation findings. (*Id.* at p. 798.)

This court in *Riverside* upheld the trial court order denying issuance of the writ of mandate. (*Riverside, supra,* 27 Cal.4th at p. 798.) The California Supreme Court reversed and ordered this court to issue a writ of mandate, ordering nondisclosure of the documents. The court in *Riverside* held that the background investigation during Madrigal's probationary employment concerned a personnel matter subject to POBRA. Madrigal therefore had a right under sections 3305 and 3306 to view the documents, but Madrigal waived that right. (*Riverside,* at pp. 795, 807.) The court in *Riverside* concluded that, even though Madrigal was a probationary employee, he was entitled to review the background investigation records because the background investigation took place during Madrigal's employment and the records affected his employment status. (*Id.* at p. 802.)

The *Riverside* court further concluded that POBRA applied to a personnel document containing adverse comments, even though it was prepared after Madrigal's termination. (*Riverside, supra,* 27 Cal.4th at p. 803.) The court reasoned: "We think it would elevate form over substance and also permit an inappropriate end run around the Bill of Rights Act were we to hold that a law enforcement agency could avoid the Act simply by *first* terminating the employee and *then* placing its adverse comments in the employee's personnel file. Where, as here, the adverse comments arise out of an investigation, the very purpose of which was to assess the employee's qualifications for continued employment, we think the Bill of Rights Act applies, whether or not the comments are prepared and filed prior to termination." (*Ibid.*)

In discussing whether Madrigal was entitled to review the background investigation file, the *Riverside* court noted that "The parties agree that, if the County had completed its background investigation *before* hiring Madrigal, and if that background investigation had caused the County not to hire Madrigal, Madrigal would now have no right to view documents in the investigation file. In that case, *there is no employment relationship,* no personnel file, and hence no question of the investigation file being subject to disclosure under the Bill of Rights Act." (*Riverside, supra,* 27 Cal.4th at p. 799, italics added.)

Here, there was no employment relationship when Barber requested to view his personnel file under POBRA because he had already been terminated six months earlier. Furthermore, unlike in *Riverside,* before terminating Barber, CDCR gave Barber a notice of adverse action, in which he was told

he would be terminated, he was advised of his right to contest the termination, and he was provided with copies of all documents relied upon in terminating him. Barber has not established that CDCR withheld any documents containing adverse comments or complaints. Furthermore, the court in *Riverside* does not address the issue raised in the instant case of whether a former officer retains POBRA rights under section 3306.5, to review his personnel file.

This issue is also not addressed in *Venegas, supra*, 101 Cal.App.4th 916. In *Venegas*, the court held that under POBRA, Officer Kime was entitled to review and respond to a police department internal affairs index card listing all complaints against Kime. (101 Cal.App.4th at p. 929.) As supervising sergeant of the police department bomb squad, Kime was provided a city take-home car. The car was stolen and later recovered. Kime's supervisor filed a complaint against Kime, charging him with neglect of duty. Ultimately, no adverse action was taken against him. (*Id.* at p. 920.) Kime thereafter requested under sections 3305 and 3306, review of any documents within the department containing adverse comments relating to the car theft incident. (*Venegas*, at p. 920.) The department denied Kime's request for documents, stating there were no such records in his personnel file and any internal affairs records did not result in discipline. (*Ibid.*) The internal affairs section kept an index card which referred to the investigation of Kime regarding the car theft, along with all other complaints against Kime. (*Id.* at p. 921.) The trial court denied Kime's petition for a writ of mandate requesting records, concluding Kime failed to establish a right to disclosure under POBRA because he had not established any adverse personnel action was taken against him and the index card was not used for personnel decisions. (101 Cal.App.4th at p. 921.)

The *Venegas* court reversed the trial court ruling, concluding the police department was required to produce the index card on the grounds "an officer's rights are triggered by the entry of any adverse comment in a personnel file or any other file used for a personnel purpose." (*Venegas, supra*, 101 Cal.App.4th at p. 925.) The *Venegas* court noted that an adverse comment "is subject to disclosure even if the officer does not suffer some sort of adverse consequence, as long as it has that potential." (*Id.* at p. 926.) *Venegas* is not dispositive here because Barber was no longer employed with CDCR when he made his records request and he did not request a particular document or documents containing adverse comments. Rather, Barber made a broad request under section 3306.5 to review all of his records from 2005 through 2009.

*Seligsohn, supra*, 121 Cal.App.4th 518, is likewise distinguishable. In *Seligsohn*, two police officers employed by a city college filed writ petitions

seeking production of citizen complaints accusing them of discrimination and harassment. The citizen complaints were ultimately dismissed. The officers filed writ petitions under sections 3305 and 3306, against the college, seeking production of any complaints filed against them that were in the college's office of affirmative action (OAA). The trial court denied the officers' writ petitions. (*Seligsohn,* at pp. 521–523.) The college argued the OAA files were separate and distinct from the personnel files of college employees since the OAA is not part of the college department of public safety or the college's human resources department. Therefore the college was not required to produce under POBRA the OAA discrimination complaints against the officers. (121 Cal.App.4th at p. 528.) The *Seligsohn* court rejected the college's argument, explaining that the officers were entitled to the OAA complaint records under POBRA because the records had the potential of creating an adverse impression and serving as a basis for disciplinary action. (121 Cal.App.4th at pp. 530–531.)

Neither Barber nor CDCR has cited case law dispositive of the issue raised in this case of whether a former officer has a right under section 3306.5 to review his or her records after termination of employment. This is an issue of first impression. We conclude, based on the language of section 3306.5, construed within the context of the POBRA statutory scheme as a whole, that Barber was not entitled to review his personnel and internal affairs records pursuant to a broad records request under section 3306.5 after he was terminated. According to the Legislative Counsel's Digest regarding section 3306.5, "[e]xisting law requires employers to make employee personnel files available for inspection by employees, but exempts from this requirement the state, school districts, and other specified public employers. The Public Safety Officers Procedural Bill of Rights requires that a public safety officer have read, and have the opportunity to respond to, any comment adverse to his or her interest before it is placed in his or her personnel file. [¶] This bill would require employers of public safety officers to permit an officer to inspect his or her personnel file or a copy during usual business hours, with no loss of compensation. . . ." (Legis. Counsel's Dig., Assem. Bill No. 2267 (1999–2000 Reg. Sess.) 6 Stats. 2000, Summary Dig., p. 98.)

The Senate Rules Committee analysis of Assembly Bill No. 2267 (1999–2000 Reg. Sess.) (§ 3306.5) further states that "Existing law (Government Code Section 3300, et seq.) establishes the Public Safety Officers Procedural Bill of Rights Act, specifying the procedures to be followed whenever any public safety officer is subject to investigation and interrogation for alleged misconduct which may result in punitive action. 'Punitive action' is defined as any action which may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer as punishment. (Government Code Sections 3300–3311.) [¶] . . . [¶] This bill does the following: [¶] 1. Requires that every employer shall, at reasonable

times and at reasonable intervals, upon the request of a public safety officer, during usual business hours, with no loss of compensation to the officer, permit that officer to inspect personnel files that are used or have been used to determine that officer's qualifications for employment, promotion, additional compensation, or termination or other disciplinary action. [¶] 2. Requires that each employer keep each public safety officer's personnel file or a true and correct copy thereof, and shall make the file or copy thereof available within a reasonable period of time after a request therefor by the officer." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2267 (1999–2000 Reg. Sess.) as amended May 26, 2000, pp. 1–3.)

Section 3301 explains, with regard to peace officers' POBRA rights, that "The Legislature hereby finds and declares that the rights and protections provided to peace officers under this chapter constitute a matter of statewide concern. The Legislature further finds and declares that effective law enforcement depends upon the maintenance of stable employer-employee relations, between public safety employees and their employers. In order to assure that stable relations are continued throughout the state and to further assure that effective services are provided to all people of the state, it is necessary that this chapter be applicable to all public safety officers, as defined in this section, wherever situated within the State of California." (§ 3301.)

The court in *McMahon, supra*, 172 Cal.App.4th 1324, explained that the purpose of section 3306.5, in the context of POBRA as a whole, is the following: "From its placement within that scheme, it is obvious the Legislature added section 3306.5 to help effectuate the related concerns of the two preceding sections, Government Code sections 3305 and 3306, which are to provide covered officers with 'the right to review any adverse comment placed in their personnel files and to submit a written response.' [Citation.] As such, the general purpose of all three provisions is to facilitate the officer's ability to respond to adverse comments potentially affecting the officer's employment status. [Citation.]" (*McMahon*, at p. 1332, fns. omitted; see *id.* at p. 1335.)

■ In construing section 3306.5, we apply well-recognized principles of statutory construction. "When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.]" (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148, 863 P.2d 218].) "In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) "The words of the statute must be

construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Id.* at p. 1387; see also *McMahon, supra,* 172 Cal.App.4th at pp. 1331–1332.) Ultimately, "a practical construction is preferred." (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1147 [43 Cal.Rptr.2d 693, 899 P.2d 79].) "In construing a statute, a court may consider the consequences that would follow from a particular construction and will not readily imply an unreasonable legislative purpose. Therefore a practical construction is preferred." (*Ibid.*)

Applying these principles of construction, we find that the Legislature's intent was to allow peace officers to review their personnel records and correct any misstatements discovered in their records in the event erroneous, derogatory information might result in adverse impact on the officer's employment. There is no indication in section 3306.5 or its legislative history that the Legislature intended that former officers are entitled to review their records after termination of employment under section 3306.5. Section 3306.5 states that an "employer," not "former employer," shall permit an "officer," not "former officer," to inspect his or her personnel files. Section 3306.5 further specifies that the inspection shall not result in "loss of compensation to the officer," thereby indicating the Legislature's intent that section 3306.5 apply only to currently employed peace officers.

■ We recognize that section 3306.5 also states that an employer must permit the officer to inspect his or her "personnel files that are used or have been used to determine that officer's . . . termination or other disciplinary action," and this can be construed as providing a terminated officer with the right to review his or her records under section 3306.5. But viewing the Legislature's intent in enacting section 3306.5, in conjunction with the history of section 3306.5 and the POBRA statutory scheme as a whole, we reject such a construction of section 3306.5. A more reasonable interpretation of section 3306.5 would be that, up until the effective date of termination, an officer has the right under section 3306.5 to review his or her employment records. After termination, section 3306.5 does not apply. As section 3301 explains, the purpose of POBRA is "the maintenance of stable employer-employee relations, between public safety employees and their employers." (§ 3301.) Once there is no longer an employer-employee relationship, POBRA no longer applies. This makes sense within the scheme of POBRA and section 3306.5, particularly since an officer is entitled to notice of adverse action, including notice of termination. Up until the effective date of termination, an officer may request review of his or her records under section 3306.5.

In the instant case, Barber was placed on administrative leave in January 2008, until his termination and was served with a notice of adverse action on March 24, 2009. The notice advised Barber that his employment was terminated, effective April 10, 2009, and that he had a right to respond to the notice up until April 10, 2009, along with a right to file an appeal with the SPB within 30 days. Along with the notice of termination, CDCR provided copies of all documents and materials giving rise to Barber's termination. Since the instant writ petition is founded on a section 3306.5 records request made after the effective date of Barber's termination, we conclude the trial court appropriately denied Barber's petition for review of his records.

Even assuming, without deciding, section 3306.5 applies after an officer has been terminated, CDCR did not violate POBRA by rejecting Barber's records request because, prior to the effective date of termination, CDCR provided Barber notice of termination and copies of all records relied upon in terminating Barber.[6] Citing *McMahon, supra*, 172 Cal.App.4th 1324, CDCR argues that section 3306.5 does not require CDCR to provide Barber with investigative materials that CDCR already provided to him, and if Barber seeks additional undisclosed investigative materials, he bears the burden of showing such documents were used or relied on for personnel purposes. CDCR asserts that it gave Barber investigation reports Nos. S-HGS-716-07-C and S-HGS-716-07-A, which were the basis of Barber's civil service misconduct case, which resulted in Barber's dismissal, effective April 10, 2009. Investigation report No. S-HGS-030-08-1, also provided to Barber, was the basis of a different SPB misconduct case. As to the remaining investigative files Barber requested (S-HGS-021-05-A and IAU-05-021), CDCR searched for the files and concluded they did not exist. The files therefore were not available for inspection.

Barber argues *McMahon, supra*, 172 Cal.App.4th 1324 is factually distinguishable because, in *McMahon*, the police department provided the officer with all of the investigative materials and none of the citizen complaints were sustained or resulted in any discipline. Without citing to any evidence in the record, Barber claims CDCR has not provided him with all of his records. Although *McMahon* is factually distinguishable in that Officer McMahon's section 3306.5 records request was made while he was still employed as an officer, *McMahon* is nevertheless instructive.

In *McMahon, supra*, 172 Cal.App.4th 1324, McMahon was transferred to another division because of the department's concern for his safety. Because of his antigang efforts, numerous citizen complaints were filed against

---

[6] CDCR was not required under section 3306.5 to provide copies of records, as requested in Barber's appellate opening brief. Section 3306.5 only requires access to records, whether they be the originals or copies, for review.

McMahon. The police department provided McMahon with copies of the complaints. (*Id.* at pp. 1328–1329.) McMahon was given the opportunity to respond to the complaints but did not avail himself of that opportunity. The police department ultimately determined that the citizen complaints against McMahon were intended to drive McMahon out of his assignment, and were unfounded and spurious. (*Id.* at p. 1329.) Thereafter, McMahon requested additional written and recorded materials generated by the internal affairs investigation into the citizen complaints against McMahon. The police department denied McMahon's request, explaining that McMahon had already been provided with copies of all materials used to adjudicate the complaints. The police department informed McMahon that, since he had been provided with detailed descriptions of the complainants' accusations, McMahon had been given an adequate opportunity to respond to the accusations, consistent with POBRA. Moreover, as none of the complaints was sustained, there were no adverse comments placed in his personnel file requiring a responsive comment. (172 Cal.App.4th at p. 1330.)

McMahon filed a verified petition for peremptory writ of mandate under section 3306.5, subdivision (a), to compel the police department to make available for inspection all of the undisclosed documents and materials compiled in the course of investigating the complaints against him. McMahon argued that, without access to those materials, McMahon was unable to ascertain whether his personnel records contained misconduct allegations or adverse comments that could potentially impair his career advancement or opportunity for future employment. The *McMahon* court affirmed the trial court ruling denying writ relief. The court concluded the police department's reliance on McMahon's records in deciding to transfer McMahon was not a use of his records to determine his qualifications or for a punitive purpose. (*McMahon, supra,* 172 Cal.App.4th at pp. 1333–1334.) In addition, the disclosed records provided McMahon with an adequate basis for responding to the citizen complaints against him, and the police department was not required to allow McMahon to review investigative materials that were not used for personnel decisions. (*Ibid.*)

The court in *McMahon* noted that "The Department's obligation to disclose the underlying investigative materials turns on whether they qualify as 'personnel files that *are used* or *have been used* to determine that officer's qualifications for employment, promotion, additional compensation, or termination or other disciplinary action' under Government Code section 3306.5, subdivision (a). . . . We inquire whether Officer McMahon carried his burden of showing the Department used or relied on the undisclosed materials for any of the enumerated personnel purposes." (*McMahon, supra,* 172 Cal.App.4th at p. 1333.)

The *McMahon* court further noted that McMahon merely speculated "as to the possibility that other adverse comments might be contained in the undisclosed materials." (*McMahon, supra,* 172 Cal.App.4th at p. 1334.) McMahon offered no evidence disputing the police department's showing that undisclosed materials were separately maintained by the internal affairs division and were not kept in the personnel files. Since the police department was not authorized to use materials kept in the internal affairs files to make personnel determinations, section 3306.5 did not require disclosure of those documents. (*McMahon, supra,* 172 Cal.App.4th at p. 1335.) In concluding McMahon was not entitled to any of the requested records, the *McMahon* court stated: "Again, his unsupported assertion that there may be 'secret, unanswered stigmatizing allegations' lurking in the internal affairs investigative files that may undermine his chances for future employment amounts to mere speculation." (*Id.* at p. 1337.) Likewise, here, CDCR established it had provided Barber with all documents relied upon in terminating Barber, and Barber has not met his burden of establishing that CDCR withheld any documents that may undermine his chances for future employment.

Barber argues that CDCR had a history of withholding and destroying his personnel records, such as when CDCR failed to give him notice of a *Pitchess* motion brought by the state Attorney General in June 2009, requesting Barber's personnel records. Barber discovered the motion when reading, on the court's Web site, court minutes in the case of *Ruelas v. Shelby* (RCV-RS-083017). Barber sent CDCR a letter notifying the CDCR director, Youngen, that his right to notice of the motion had been violated. The motion hearing was then continued until independent counsel was retained to represent Barber in the matter. The trial court ultimately granted the *Pitchess* motion and CDCR produced Barber's records for the years of 1999 through 2004.

Barber concedes on appeal that CDCR "complied with the law" in the *Pitchess* motion but raises the *Pitchess* motion matter to demonstrate that CDCR has committed a pattern of misconduct and cannot be trusted to comply with the law, and should be sanctioned. Barber also enumerates various instances of alleged concealment and destruction of his records. Such incidents do not establish that CDCR failed to disclose all documents relied upon in terminating Barber or any other documents containing adverse comments. Because Barber has not presented any evidence of this, we conclude CDCR did not violate POBRA by denying Barber's writ petition requesting review of all of Barber's records from 2005 through 2009.

## V

## DISPOSITION

The judgment is affirmed. CDCR is awarded its costs on appeal.

McKinster, Acting P. J., and Richli, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 25, 2012, S200999. Kennard, J., was of the opinion that the petition should be granted.